Lipscomb, J.
In order that there may be no misunderstanding as to the extent of tlie decision of the court in this case, it is uot improper that I should briefly express my own opinion. The important and almost the only question isas to the character of the title offered in evidence, as appears from the record.. Is it a perfect or only an inchoate right? If the first, it would separate the laud in controversy, in propria vigore, from the mass of the public domain, and the land would cease to be of the vacant laud of the State, unless it so became by tlie terms of tlie grant, or by some action of the judicial or political authority of tlie State.
The distinction between perfect and imperfect titles, under the Government of Coahuila and Texas, has been often discussed in this court, and resulted in tlie acknowledgment of the distinction, and resting it on the following basis, that is to say: if the grant were to receive no further act to constitute it *229 -an absolute title to the land from the legal authorities, taking effect in pres/mti, \it was a perfect title, requiring no further action of the political authority to its perfection. But if, something remained to he done by the Government or its officers, such title or right was imperfect; and until it received the sanction of the political authority it could not claim judicial cognizance. Tested by these rules, we have arrived at the conclusion that the title of the appellee is a perfect title, vesting the fee, hut subject to a defeasance on the failure of the grantee to perform the subsequent conditions imposed. If these conditions had been precedent, the fee would not have vested until the performance of the conditions. Such is the case of The United States v. Kingsly, in 12 Peters. The concession of Governor Coppinger expressed on its face that no title was to be acquired until the conditions were performed. Such also was the title exhibited by Perez, in the case of Paschal v. Perez, decided at the present term. In that case the title relied on showed that certain conditions were to he performed before a final title could be procured. In this case the conditions are subsequent. It is like any other absolute sale, in which the purchaser obtains a title to full dominion, hut the property sold is mortgaged for the fulfillment of the conditions of the sale. The land was to he forfeited if the conditions were not complied with.
The appellant alleges that the conditions were not performed, and that a forfeiture of the title was the consequence. He is here met, however, by the eighth section of the schedule of the Constitution of the State, directing that “ the Legislature shall by law provide a method for determining what lands may have been forfeited or escheated.” Ho method having yet been provided by the Legislature, it presents a case in which all jurists agree, that the court must wait the lead of the political authority before they can act. The appellant having located subsequent to the adoption of the State Constitution, whatever rights he can claim under his location must he subject to the Constitution. But I wish it distinctly understood, that so far as his right to assert the forfeiture and to take the benefit thereof is concerned, I am controlled in this case by the State Constitution. I express no opinion as to what would have been the result had the location been made before its adoption.
There can he no question but that if the Revolution had not taken place, the State of Coalmila and Texas could have required a strict performance of the conditions; and there can he as little, that the same power and right devolved on the Government of Texas after, the Revolution. It is provided for by the 2d section of the schedule of the Constitution of the Republic, in the following terms: “All fines, penalties, forfeitures, and escheats which have accrued to Coahuila and Texas, or Texas, shall accrue to this Republic.” (Dig., p. 35.) There was no legislation by the Congress of the Republic on the subject of forfeiture, excepting in the single case of forfeited improved lands, referred to by this court in thé'case of Paul v. Perez; and the question of the right of a locator to denounce any land as forfeited, and appropriate the benefit of such forfeiture to himself, if not sustained and authorized by any law of the new Government of the Republic of Texas, was not restrained by any express legislation; and the question is an open one, whether such right did not exist until the adoption the State Constitution.
It is certain that down to the period of the commencement of the Revolution it would have been competent for anjr person entitled to land to have denounced ally land that he might wish to appropriate to himself; and, if in the process of perfecting his title, it should appear that the land he wished to appropriate had already been granted or conceded, the inquiry would then be made if it had been forfeited for the non-performance of conditions or from any other cause. If the fact were notorious of a forfeiture, it is believed to have been the practice to extend the title to the denouncer, without resorting to any formal mode of ascertaining the fact. Or, if not certain, it was referred to competent authority, to inquire into the fact of such forfeiture; and whether the denouncer should have his title or not, depended upon the result of that inquiry.
Rote 60. — Jenkins v. Chambers, 9 T., 167.
Note 61. — Titus v. Kimbro, 8 T., 210; The State ?). Sullivan, 9 T., 166; Jenkins, u. Chambers, 9 T., 167; Jones v. Garza, 11 T., 186; Ruis v. Chambers, 15 T., 586; Cavazos v. Trevino, 35 T., 133.
NoTe v. 11 Martin v. 26 T., Barrett v. Kelley, 31 T., 476.
Note 63. — Swift v. Herrera, 9 T.,263; Rivers v. Foote, 11 T., 662; Johnston v. Smith, 21 T., 722; Bowner v. Hicks, 22 T., 155; Luter v. Mayfield, 26 T., 325; Howard v. Colquhoun, 28 T., 131.
By the Revolution, the machinery by which rights under the old Government were enforced was changed; but whether the right, as under the former laws, <lid not remain unimpaired to the person entitled to land, by a resort to a different mode through the judicial tribunals of the country, down to the adoption of the State Constitution, lias never been decided; and it is a question involving important interests; and that it may elicit a full investigation and be well understood whenever it may be brought up for adjudication, is my object in now adverting to the subject.