## S. A. WHITE v. T. HOLLIDAY.

Where there was a joint colonial grant of two leagues to two individuals, on unstamped paper, with the following clause succeeding the act of possession, or title: "On this date, this petition was attached to the manuscript record to which it corresponds, and raised to the corresponding seal, which I seal for its continuance." (Here followed a *rubric*, but no name nor date, unless the date of the previous act of possession be imputed.) *Held*, That the paper appeared to have been duly legalized.

An agent who attended to the procuring of the title to his principal, a colonist, was not disqualified from being an assisting witness, by the mere fact of agency, without further interest appearing.

To the third and fourth objections, it is a sufficient answer, that there is nothing in the colonization laws, nor is there any general principle of law, which forbade the colonist to employ the instrumentality of an agent, or attorney, in obtaining his grant; nor are we aware of any inhibition in the law, against comprising in one final title, the lands granted to two colonists. (The application and title were for two leagues to two individuals, as heads of families, on paper "raised to the corresponding seal.")

White v. Holliday.

Where the act of possession recited that the Commissioner "adjudged the land (describing it) to them" (the petitioners) and that he "put them in possession "of the two sitios of land, which in their name was taken by their attorney "quietly and peaceably, without any opposition whatever, and performing all "the acts of true possession," it was held, that the fee passed to the grantees, and that the title was perfect.

Actual residence in the country, previous to the making of the grant, (colonial grant) has never been held necessary to the validity of the title. Such was never the construction placed upon the colonization laws. The colonists were allowed the term prescribed by law to comply with the conditions annexed to their grants, most of which have been dispensed with in reference to grants of the character of the present, thereby discharging the titles of the colonists, of such conditions, rendering them absolute, and indefeasible by reason of their non-performance. (The title, in this case, was a joint colonial grant of two leagues to two individuals, as heads of families.)

Where a colonial title was obtained through an agent, and witnesses were introduced, who testified, in substance, that they had been acquainted in the colony since before the date of the petition and title, and that they had never known the persons named as the grantees in the title; but that they could not say they knew all the persons in the colony; the persons named might have been there without their knowledge; *Held*, That the proof did not justify an instruction to the jury, that if the grantees never were in the colony, the grant was void; or that if they had abandoned the country, the grant was void.

It was not competent for the plaintiff to impeach the title, on the ground that it was forfeited, by reason of the grantee's having left the country to avoid a participation in the struggle for independence; or by reason of the non-performance of conditions subsequent, even upon the supposition that those conditions had not been discharged. Besides, the evidence did not authorize, the instructions, &c.

Where the title of the defendant, (or plaintiff,) is "shown, by documentary evidence, to be perfect and valid," being the elder title, it follows that the land embraced in it, was not subject to location; and "consequently the rulings of the "Court upon the admissibility of the plaintiff's, (or defendant's,) evidence of "title, are immaterial."

Appeal from Victoria. The title relied on by defendant was as follows: (Paper without usual stamp.)

"Mr. Commissioner: The citizen Santiago Serna as attor-"ney by law of my son-in-law, (hijo politico,) citizen Juan "Flores and of the citizen Miguel Menchaca, according to the "verbal authority which they conferred on me before you to "take one sitio of land as a settler in this colony, before you "in the most proper manner of right would appear and say "that having obtained permission from the Empresarios, that "they should be admitted in this colony, I pray you in their

" name, that you may be pleased to order the adjudication to
" each as married men, the sitio of pasture land which per-
" tains to them. It is justice that I ask, I swear, &c.

" Refugio, 8th Oct. 1834.      SANTIAGO SERNA."

" Refugio, 12th October, 1834.

" This petition will pass to the Empresarios that they may
" inform me in relation to it. I provide, order and sign with
" those of my assistance.

" I certify,        JOSE JESUS DE VADAURI.

" Assisting, JUAN DUNN,      Assisting, ————."

" Refugio, October 18th, 1834.

" In regard to the admission of the citizens Juan Flores and
" Miguel Menchaca in this colony, from this time, we give our
" consent as required by the law.

" SANTIAGO POWER."

" In the same place and on the 20th day of the current
" month and year, I, said Commissioner, in consequence of my
" previous order in the foregoing decree and consent given by
" the Empresarios, in regard to the admission of the citizens
" Juan Flores and Miguel Menchaca, adjudge to them in
" form two sitios of land for pasture which they have prayed
" for, including two labors of temporal land, which, accord-
" ing to the surveys made by one of the Surveyors appointed,
" are composed of 4000 Mexican varas front upon the San
" Antonio river, on the left side, or margin, and running back
" on the upper side 12,376 varas and on the lower side 11,810
" varas, bounded on the North by lands of the citizens Galvan,
" McDonough and Gonzales, on the west by Juan Baptiste
" Lideck, on the south by the aforesaid river, and on the east
" by lands of the Gorros. In virtue of which and in exercise
" of my authority, and in the name of the Supreme powers of
" the Mexican nation and of the State, I put them in posses-
" sion of the two sitios of land which in their name was taken
" by their attorney quietly and peaceably, without any oppo-
" sition whatever, and performing all the acts of true posses-
" sion, understanding that the grantees shall construct fixed

" boundaries, observing in addition the existing laws of colo-
" nization, with which understanding he signs with me and
" those of my assistance, of which I certify.

" JOSE JESUS DE VADAURI.     SANTIAGO SERNA.
    " Assisting, Santiago Serna.      Assisting, Juan Dunn."

" On this date, this petition was attached to the manuscript
" record to which it corresponds, on this leaf of the present
" paper, and raised to the cerresponding seal, which I seal for
" its continuance."     (Here followed a *rubric,* but no name nor
date, unless the date of the previous act of possession be imputed.)

The above was a certified copy, dated April 7th, 1852, from
the General Land Office, of the original on file there ; and
objection to its being a copy, instead of the original, was
waived.

In the town of St. John the Baptist and Purita de Lampas-
as, on the 28th March, 1835, Flores and Menchaca, by sepa-
rate instruments, reciting that they were inhabitants of San
Beneventura in the State of Coahuila and Texas, authorized
the said Jose Jesus Vadauri (the Commissioner of that name?)
to sell said lands, &c.   On the 5th July, 1838, Jose Jesus Va-
dauri sold the said land by virtue of the power aforesaid to
the said Santiago Serna, for their " just and lawful value."
The chain of transfer was complete, down to the defendant's
lessor.

The plaintiff offered to read in evidence what purported to
be a certified copy in Spanish, from the county records of
Refugio, of the same title, recorded there from a certified copy
from the General Land Office, made February 20th, 1840 ;
but it was excluded on the ground that it was a copy of a copy.
There appeared to be only one assisting witness to this instru-
ment of possession ; and the clause as to the legalization of
the paper was not on it.

The plaintiff asked the Court to instruct the jury :

" 1st.  That if they believed, from the evidence, that the gran-
" tees, Flores and Menchaca, never were in the colony, they
" must find for the plaintiff.
      76

" 2nd. If they believed that they abandoned the country " previous to, or during the struggle for independence, then " the grant to them is void, and they must find for plaintiff;" which were refused.

The defendant asked the Court to instruct the jury, "That " the title to Menchaca and Flores was a perfect title, and " vested the fee in the grantees, unless fraudulently obtained; " that it was not necessary to prove a compliance with the " conditions; that actual residence in the colony previous to " the grant was not necessary; and that they had six years " after the title issued, to occupy and cultivate the land ; that " abandonment of the country, which operated as forfeiture of " land, was a leaving of the country by the grantee, and a dom- " iciliating of himself in a foreign State and country ; that " fraud is not to be presumed, but must be proved ; and that " a public officer, in the discharge of a public act, within the " pale of his authority, is presumed to have done his duty." All which were given.

This statement must be read in connection with the state- ment in the opinion of the Court.

_S. A. White_, for appellant. I. The first objection is the want of a stamp. (Dallam, 131, Sec. 9 ; 1 White, 427, 514 ; Decree 16th Oct., 1823 ; Phillips Ev. 385 ; Story Cont. Sec. 260, 315, 631.)

The second objection is, that the grant has but one assist- ing witness. (Dallam, 133, Sec. 27 ; 1 White 275.) There seems to be a difference in the translated copy from the Gen- eral Land Office and the one on record in Refugio ;* in the first, the agent of the grantees seems to be a witness, in the other there is no pretence of but one.

The 3rd is, that the grant issued to an attorney, and again, that attorney had no appointing power ; the objection is, that the jurisdiction of the Commissioner is not shown ; the Coloni- zation Laws, the Commissioner's instruction, and his particu-

---

* This copy was excluded ; see statement of facts.—REP.

lar instruction were limits on his authority. For this, it is only necessary to look at the object of a Colonization Law, and to observe that, in almost half of the Sections, the words colonist, new settler, or something else, which, if not declaring that an actual residence in the colony was necessary to a grant, it persuades irresistably to that belief. And if the words new settler, colonist, &c., need any definition, it will be found in the New Recopilacion of the Indies. See Lib. 4, Tit. 5, Law 6; Lib. 4, Tit. 7, Law 18; (2 White, 47;) again, Lib. 4, Tit. 12, Law 2; (2 White, side p. 39;) Lib. 7, Tit. 22, Law 9; (White, side p. 122;) Sec. 10, 11, 22, 23, are clear on this point. The presumptions are against the jurisdiction of limited authority. (See Conk. Tr. 221.) The title should show on its face, that the Commissioner had jurisdiction. It goes far to sustain this construction that Power & Hewitson were by their contract bound to introduce four hundred families, one-half Mexicans. It cannot be understood that this meant Mexicans were introduced, when living at Lampasos. If there were any other mode by which Mexicans could get land, it was by purchase. (See Colonization Law, Art. 24.) This title is not *prima facie* a good colonial grant or purchase.

The fourth objection to this title is, that it purports to be a title to two tracts of land to two individuals in one instrument. It is illegal that it is a joint tenancy without the authority of law. (See Colonization Law, Art. 14.) The titles were conditional, and the conditions individual. Had it been on stamped paper, it would have been a fraud to the amount of one original, and one testimonio. (See Dallam, 131, Sec. 9; also Phillips Ev. side p. 390 *et seq.*)

The next objection is, that the grant conveys no fee, nor any estate transferable to which this defendant might succeed. The rule for interpreting Mexican titles would be, I presume, the decrees of Mexican State, construed by Spanish law, by which this title would be found a personal use. (See 1 White, side p. 142.)

II. The second assignment of error was the instruction given by the Court. I submit that the instructions, although some of them were true as abstract principles, were, under the proof erroneous. There was no pretence that the grantees ever lived in the country, or nearer than Lampasos, leaving the question one of law. I contend that to be an actual colonist, was a condition precedent, without which the Commissioner had no power to grant, or the colonist a capacity to reveive. Notice the Colonization Law, and see how many Sections speak of new settler, colonist, &c.; see also Decree No. 70. These Sections will receive a proper construction from the laws of the Indies above referred to, and with that light, cannot be misunderstood. The law, the policy and object of the Government, all speak the same thing.

*W. S. Glass*, for appellee. I. The title to Flores and Menchaca was a perfect title; and could be impeached only for want of authority in the officer, or fraud in the parties. (Hancock v. McKinny, 7 Tex. R. 384.)

Of the several objections urged against its admissibility in evidence, only two are deemed at all material; and they have no foundation in fact. By an examination of the record, it will be seen, not only that the paper was legalized, but that there are two assisting witnesses. The agency of Serna could not have disqualified him for a witness because he had no interest in the subject matter of the grant.

II. Neither the residence of the grantees nor their presence in the colony was necessary to the validity of the grant, they being Mexicans and citizens of Coahuila and Texas. (Jenkins v. Chambers, 9. Tex. R. 167.)

But if necessary, the evidence did not even show that they were non-residents of the colony. The title recites that Serna's authority as agent was conferred in the presence of the Commissioner. There was no proof that the grantees abandoned the country to avoid participation in the struggle for independence; nor would such proof have been admissible. (Hancock v. McKinny, 7 Tex. R. 384.)

WHEELER, J. This was an action of trespass to try title. The plaintiff, (who is appellant,) claimed the land by virtue of a certificate and survey thereupon, in 1850.

The defendant justified his possession under a title for two leagues of land issued to Flores and Menchaca, as colonists, by the Commissioner of Power & Hewitson's colony, in 1834; obtained through the agency of an attorney representing the grantees, and who was also one of the assisting witnesses.

There were objections to the evidence of title introduced by the plaintiff, which it is not material to notice.

The defendant offered in evidence a certified copy of the title, relied on by him, from the General Land Office, to which the plaintiff objected, 1st, That it wanted a stamp; 2nd That it had but one assisting witness; 3rd That it was made to an agent; 4th, That it was a title in joint tenancy; and 5th, That it conveyed only a life estate. The Court overruled the objections and admitted the title in evidence. Witnesses were introduced by the plaintiff, who testified, in substance, that they had been acquainted in Power & Hewitson's colony since before 1834, and that they had never known the persons named as the grantees in the title introduced by the defendant; but that they could not say they knew all the persons in the colony; the persons named might have been there without their knowledge.

The Court instructed the jury, at the request of the defendant, that, " actual residence of the grantees in the colony pre-" vious to the grant was not necessary; and that they had six " years after the issuance of the title to cultivate and occupy " the land."

The plaintiff asked the following instructions, which were refused. 1st, that if the grantees in the original grant, were never domiciliated in the colony; or 2nd, if the grantees abandoned the country previous to, or during the struggle for independence; or, 3rd, if the grantees were never in the colony, the grant is void.

There was a verdict and judgment for the defendant and the plaintiff appealed.

The title relied on by the defendant was the elder title, and if valid, must prevail. Our opinion as to its validity will supersede the necessity of inquiring into the sufficiency of the evidence of title introduced by the plaintiff.

The first and second objections taken to the title are not supported by the record. It appears by the copy from the Land Office, introduced in evidence, that the title was not wanting in either of the particulars indicated. The paper appears to have been duly legalized; and the attorney of the grantees does not appear to have had any interest to disqualify him from being one of the assisting witnesses.

To the third and fourth objections, it is a sufficient answer, that there is nothing in the Colonization Laws, nor is there any general principle of law, which forbade the colonist to employ the instrumentality of an agent, or attorney, in obtaining his grant. Nor are we aware of any inhibition in the law, against comprising in one final title, the lands granted to two colonists.

The remaining objection is equally untenable. The title introduced in evidence was the final title, vesting the fee, with the possession, in the grantees. It is less formal in its statements and recitals than colonial titles usually are; but it is not, on that account, the less effectual to pass to the grantees the ultimate proprietorship of the soil. It adjudges to the grantees the title and possession of the land, which had been surveyed for them by a Surveyor appointed for that purpose; the Commissioner recites that he put the grantees in possession, "performing all the acts of true possession;" and he formally executed to them the title. There remained no act to be done on the part of the government to complete the title. No further act of confirmation or investiture of title was contemplated or required by the law; and nothing further was requisite to vest in the grantees a perfect title. This subject has been so fully considered in cases heretofore decided, that it is unnecessary, and would be quite superfluous, to enter anew upon its discussion. The several objections to the title,

relied on by the defendant, must be held to be untenable, upon the principles, settled by repeated decisions of the Court, which are too familiar to require particular reference.

The Court did not err in the instruction given at the instance of the defendant. Actual residence in the country, previous to the making of the grant, has never been held necessary to the validity of the title. Such was never the construction placed upon the Colonization Laws. The colonists were allowed the time prescribed by the law to comply with the conditions annexed to their grants, most of which have been dispensed with, in reference to grants, of the character of the present; thereby discharging the titles of the colonists, of such conditions, and rendering them absolute, and indefeasible by reason of their non-performance.

The ruling of the Court, in refusing instructions asked by the plaintiff, was manifestly correct; for the reason, that the instructions proposed involved the assumption of facts not warranted by the evidence; or the assumption of a right, on the part of the plaintiff, to impeach the title for the non-performance of conditions, of which it had been discharged, or for other causes of forfeiture by acts subsequent to the grant. There can be no pretence that there was any evidence conducing to show an abandonment of the country by the grantees. The burden of proof rested with the party impeaching the grant. It devolved on him to make out, in evidence, the fact of abandonment clearly and conclusively. Yet there is not the slightest foundation in the evidence, for the assumption, that the grantees had abandoned the country; thereby subjecting their titles to the operation of the 30th Article of the law of the 24th of March, 1825, or of any other provision of the Colonization Laws on that subject, whereby the land would have become vacant and subject to location. And to have given the instruction asked, would have been calculated to mislead the jury, by inducing them to suppose there was evidence sufficient to warrant them in finding for the plaintiff on that ground. To have given the instruction, therefore, would have been improper.

It was not competent for the plaintiff to impeach the title, on the ground that it was forfeited by reason of the grantees having left the country to avoid a participation in the struggle for independence; or by reason of the non-performance of conditions subsequent; even upon the supposition that those conditions had not been discharged. (7 Tex. R. 384; Swift v. Herrera, 9 Tex. R. 263, 279, 280.) And the instructions asked, which were based upon the assumption of such a right were properly refused. Besides, the evidence did not authorize the instructions, if they would have been otherwise legally proper.

There were other rulings of the Court assigned as error, which in the view of the case we have taken, it is not necessary to notice; "because" (as was said by this Court in the case of Bissell v. Haynes, 9 Tex. R. 588) "the title of the plaintiff (in "this case of the defendant) having been shown by document-"ary evidence, to be perfect and valid, the land embraced in "it was not a part of the public domain, and was not subject "to location." Consequently, the rulings of the Court upon the admissibility of the plaintiff's evidence of title was immaterial. (And see as to this case generally, Bissell v. Haynes, Id. 556, 585, 586, 587.) The judgment is affirmed.

Judgment affirmed.