EDWARD BURLESON v. THOMAS G. McGEHEE.

Where a colonial title purports to have been made by the proper officers, is regular in its articles and genuine in its signatures, it is conclusive of the right of the grantor, in the absence of actual fraud on the part of the latter.

Where a colonist who had obtained a headright in Austin's first colony, and complied with the conditions annexed thereto, alienated the same, and afterwards obtained a headright in Milam's colony, there being no evidence of actual fraud, the second grant was sustained.

Appeal from Hays. Action of trespass to try title, by the appellant against the appellee. The case was submitted to the Court, upon the following statement of facts:

The plaintiff's certificates and field notes are as described in his petition; that is to say, the certificates are genuine, and field notes thereof recorded as required by law.

The defendant claims and holds the land in controversy by regular transfer from James Curtis, to whom the land was granted on the 20th day of February, 1835, by Talbot Chambers, as Commissioner of Milam's Colony, as per deed herewith filed marked exhibit A. The deed of conveyance from said Curtis to defendant being executed on the 20th day of February, 1835.

It is also admitted that the said James Curtis, under whom the defendant claims, was admitted as a colonist of the empresario Stephen F. Austin, under his first contract, and received a league of land in said colony, as per certified copy of deed herewith filed, marked exhibit B, and that he, the said Curtis, having performed all the conditions annexed to his said grant in Austin's Colony, the same was confirmed to him on the —— day of —— before 1830, (as is believed, the precise time not now recollected,) by the action of the Ayuntamiento of San Felipe de Austin, and by him alienated prior to the grant of the one-fourth of a league here in question.

It is further admitted that at the time the land in contro-
versy was granted to the said Curtis by the said Talbot Cham-
bers, he, the said Curtis, was not residing in the limits of Mi-
lam's Colony. It is also admitted that at the date of the grant
of the land in controversy to Curtis, it was not safe to reside
in said colony of Milam, on account of Indians, and that the
danger continued up to the date of the Revolution.

The deeds marked exhibits A and B were in the common
form of colonial titles.

*A. J. Hamilton* and *J. A. Green*, for appellant.

*J. Hancock*, *B. Gillespie* and *J. Sayles*, for appellee.

WHEELER, J. This case involves the title to a quarter of a
league of land, granted by the Commissioner of Milam's Colo-
ny to James Curtis, in 1835, and held by the appellee by regu-
lar mesne conveyances from the grantee. It was submitted to
the Court upon the agreed statement of facts in the record;
and upon the facts stated, the Court held the title good and
valid as against the locator, Burleson, and gave judgment ac-
cordingly for the appellee, McGehee. In proceeding to give
judgment, the Judge (the Honorable William E. Jones pre-
siding) stated concisely the grounds of his judgment, observ-
ing: "It does not appear in this case, that any fraudulent mis-
"representations were made, or that the Empresario and Com-
"missioner were not fully advised of all the circumstances of
"the previous grant to Curtis in Austin's Colony. The Com-
"missioner was authorized and required by law to decide upon
"the qualifications of colonists to receive land; and his deci-
"sion of that question was an act of judgment, which, although
"it may have been erroneous, yet the error does not make the
"grant void *ab initio*, and the land vacant, as if no such grant
"had issued. Nor is the error of judgment in the Commis-
"sioner revisable at all; or if so, only at the suit of the State,"

&c. The case has been for some time before the Court, and with such examination and reflection as we have been enabled to give it, we are unable to perceive any substantial ground for reversing the judgment. This Court has held in repeated decisions, that if a grant has been fraudulently obtained, or issued without authority of law, it is void. (7 Tex. R. 440–41, and cases cited ; DeLeon v. White, 9 Id. 598.) Fraud in the party, that is, in the words of Chief Justice Marshall, (3 Peters, 340,) "fraud, not legal and technical, but actual and positive fraud, in fact," or a want of power in the officer, will render the grant void. But, as observed by the Judge below, it is not pretended that the grant in this case was obtained by any fraud or imposition practiced upon the officer who issued it ; or that he was not fully apprised of the fact, that the grantee had received a grant of land in another colony, which, after performing all the conditions annnxed to it, he had sold. Fraud is not to be presumed, but must be proved ; and to hold that the grant was fraudulently obtained in this case, would be to presume fraud, in the absence of proof. But it is not pretended that any fraud was practiced in obtaining the grant.

It cannot be said that there was a want of power in the officer. Undoubtedly he had the power and authority to issue the grant. He was made, by the law, the judge of the qualifications of the grantee. It was for him to decide, under the law, whether the grantee, having performed the conditions of his former contract with the Government ; having received and disposed of the land, which was the consideration for the performance of those conditions on his part ; and having become thereby wholly absolved from any further obligations to the Government as a colonist, whether he was incapacitated from becoming a colonist in a new enterprise. What was there, it may have been urged, to incapacitate him ? He had fulfilled every duty he owed to the Government under his former contract. He had sold the land to another, who, perhaps, had been thereby induced to come to the colony, and had taken his place as a citizen of the country. He was as free to leave

it, if he chose, as any other citizen. If he had chosen to do so, and, supposing him to have been an immigrant, had returned to the country of his nativity, was there any law to forbid it? And if another enterprise of colonization had been proposed, was he not as free to embark in it as others? The law contained no prohibition. The mere fact that he was present in the country did not incapacitate him from becoming a colonist; for many, doubtless, who come to the country independently of any previous connection with an enterprise of colonization, were received as colonists; and it has never been held that their rights were the less to be respected, because they did not come to the country as colonists. Native Mexicans were received as colonists. It may have been considered that the grantee in this case, having performed all the duties required of him by the Government as a colonist in the colony, and being free to leave it, was entitled to equal privileges with others, and should not have attached to him a perpetual disability to becoming a colonist in any new colony. It may have been deemed that there was a precedent which warranted this conclusion, in the regulations of the intendent Morales, for conceding lands in the provinces of Louisiana and West Florida, in the 13th Article, which declared that "The new settler, to "whom land has been granted in one settlement, cannot obtain "another concession, without having previously proved that "he had possessed the first during three years, and fulfilled all "the conditions prescribed." (2 White, Rec. 237–8,) thereby implying that if the settler had possessed the first concession for the prescribed period, and performed the conditions of the grant, he might receive another. Whether such a construction of the laws of colonization was the true one, or not, is not now the question. We might think it was not. But there was nothing in the law which, in terms, forbid it. It was a question which it was for the officers empowered by the law to decide upon the qualifications of colonists, to determine. They were required to construe the laws under which they

acted. And we have repeatedly decided that, where, in the legitimate exercise of their powers, the former authorities of the country have adjudicated upon the proper construction of these laws, and rights have been fairly acquired under their adjudications, they are not now subject to revision; that the acts done and rights acquired are to be respected and upheld, unless affected by fraud, or the unwarrantable exercise of authority. (Hardiman v. Herbert, 11 Tex. R. 656, and cases cited; Hatch v. Dunn, Id. 708.)

We think the construction of the law, adopted and acted on by the officers, in admitting the grantee as a colonist, and extending to him the title in the present case, is certainly not less defensible in principle and reason, than that which was adopted in determining what should constitute a family, in contemplation of the law of colonization of Austin's first contract, which this Court did not feel itself authorized to revise. (Hardiman v. Herbert, before cited.) Though fewer titles may have been issued under the construction of the law adopted in this instance, than under that to which we have adverted, yet those which were issued have, doubtless, long since been transferred, and are now held by those who, as in this instance, have fairly acquired them by purchase. And the consequences of revising and annulling the action of the former authorities of the country in issuing them, would be as disastrous to the few innocent purchasers who hold under titles thus issued, as if their number were greater, or the practice of thus extending titles had been more general; as it probably would have become, if the system of acquiring lands by colonization had been longer continued.

The appellee in this case is equally entitled with others, whose rights have been the subject of contestation, to invoke the application to his case, of those salutary and well established principles of law, which forbid the annulling of rights acquired under the authorities of the former Government, by disregarding the construction placed upon the laws by those

intrusted with their administration ; and the introduction, at this day, of new rules, which would tend to the general insecurity of titles, and the disturbance of the peace of society—constructions, under which titles were obtained at that day, of comparatively little value, but which, through the lapse of years, have been held and transmitted in numerous hands ; and upon which the most cherished rights have grown up, including men's homes, where they have reposed in confidence of the goodness of their titles for a quarter of a century, and in the security of which the happiness of families and the well being of society are vitally concerned. Applying therefore to this case, as we think we can but do, the settled principles which have been held to govern in other analogous cases, we conclude that the Court did not err in its judgment sustaining the title of the appellee, and the judgment is affirmed.

Judgment affirmed.