RAMON MUSQUIS V. M. M. BLAKE AND OTHERS.

The revolution did not divest or impair the right of property in land, which had been granted to a citizen under the government of Coahuila and Texas; and the removal of the owner, in 1836, and his adherence to the cause of Mexico, did not, *ipso facto*, and without any action taken by the government to declare the forfeiture therefor, make him an alien, or vacate his title, and does not incapacitate him to maintain an action for its recovery.

Where it is made manifest to a party, that he must fail, on account of his supposed incapacity to sue, under the ruling of the court, and judgment is rendered against him, and the ruling is erroneous, this court will not refuse to reverse the case, because a defence to the action, on another ground, has been sustained by proof.

The want of registration of a grant under the government of Coahuila and Texas, in the county where the land was afterwards filed on, is not sufficient, in itself, to postpone the grant to the subsequent location and survey.

APPEAL from Goliad.   Tried below before the Hon. James Webb.

This was a suit brought by Ramon Musquis, alleging himself to be a citizen of the county of Bexar, and state of Texas, against Martha M. Blake, and Edwin H. Blake, her husband, Eliza V. Underhill, and Daniel M. Underhill, her husband, and Ellen Goodwin, to remove a cloud from his title to four leagues of land, created by their claim to it; and to quiet him in his possession thereof.

The petitioner alleged, that he owned, and had had possession of the land, for more than twenty years, under good and valid grants, emanating from the proper authorities of the government of Mexico.   The defendants claimed a league of land, (a large portion of which, they admitted, conflicted with the tract

of land described in the plaintiff's petition,) under the location and survey of James Harris, deceased, the ancestor of the said Martha, Eliza, and Ellen, made by virtue of his headright certificate, issued on the 15th day of February, 1838, and which was surveyed on the land described in their answer, on the 14th day of November, 1838; which land he had selected and settled upon, in the latter part of the year 1837, or in the early part of the year 1838. They alleged further, that a patent was issued to the heirs of Harris, by virtue of such location and survey, for the said league. That from the time of the first settlement by their ancestor, to the year 1849, no adverse claim was set up to the land, and that neither upon the map of the old county of Goliad, or of the land district of Goliad, nor upon any other map, was any survey delineated, which conflicted with their said survey, until within four years past.

The answer admitted, that in 1839, a writing, purporting to be a concession of four leagues of land to Ramon Musquis, was deposited in the General Land Office, but charged that the same was invalid, null and void; and averred that their ancestor, at the time of his settlement, location and survey aforesaid, had no notice, actual or constructive, of the existence of any claim to the land.

The defendants filed an amended answer and alleged, that the plaintiff was then, and at the time of the commencement of this suit, an alien to the United States, and to the State of Texas; for that the said Musquis left the republic of Texas, in the spring of the year 1836, during the contest for independence; that he domiciliated himself in the republic of Mexico, for the purpose of avoiding a participation in the war; that he gave aid and assistance to the enemy of Texas, and thereby lost his citizenship; that he had never returned to reside in this state, but had continued, since the time of losing his citizenship, an alien, as aforesaid, to the United States and to this State, and that he could not, therefore, maintain this suit.

And for further amended answer, they said, that in the spring of the year 1836, the said plaintiff abandoned the republic of Texas, and had never since returned to the country; that by

such abandonment, he lost all title to land, and especially all claim to the land here sued for; that the said land became thereby wholly vacant and unappropriated public domain, and was so vacant, at the time when the same was located and surveyed, and at the time of the issuance of the patent to their ancestor, as thereinbefore, and in the original answer, set forth.

To this the plaintiff filed a general exception, and set forth as cause thereof, the irrelevancy of " all matters of forfeitures therein set forth, so far as the same relate to conditions broken, or acts of the plaintiff, after the alleged concessions to him had been made." The court overruled the exception.

The plaintiff introduced a grant to the land described, made to him in the year 1833, from the authorities of Coahuila and Texas, and proof of its conflict with the survey of land claimed by the defendants, to the extent of one-third of a league; and proved that the title offered in evidence, was filed in the General Land Office of Texas, on the 15th day of December, 1839.

The defendants proved that the plaintiff left San Antonio on the 24th day of May, 1836, with the Mexican army, on account of the revolution, declaring himself to be with the Mexicans in feeling, and that he should go with them; that he had not since returned, so far as the witness knew, or had ever heard; that no delineation had ever been made upon the maps of Goliad county or district of the survey of the Musquis grant. The only field-notes of that grant which had been in the surveyor's office of Goliad district, was a transcript from the General Land Office of the field-notes of surveys of land in Power and Hewitson's Colony, which were certified to, as authentic translations made from the originals, on the 17th day of March, 1847. This transcript contained a copy of the field-notes of the survey set forth in the petition, and purported to be the field-notes of survey for Ramon Musquis. The colony grants had not been filed in the office of the surveyor, though some of them were in that district.

The defendants also proved, that the plaintiff had been residing in Monclova ever since 1836; and they introduced a trans-

cript from the General Land Office, of copies of the certificate and survey, as described in their answer; and the patent to the league, as described in their answer.

The first instruction asked for by the defendants, was as follows: "That if the jury believe from the evidence, that the plaintiff left Texas in the spring of 1836, and domicilated himself in Mexico, he thereby surrendered his citizenship; and if they believe, that he has since resided in Mexico, and never returned to this country, with a view to reside here, he is an alien to this State, and cannot maintain this action."

The fifth instruction asked for by the defendants, was as follows: "That if the concession to Musquis never was registered, (recorded,) as required by the Act of 1836, the rights of the defendants, to the land, under their survey and patent, cannot be affected by the claim set up under the concession to Musquis."

Both of these instructions were given to the jury. There was a verdict in favor of the defendants, for the land claimed by them, and judgment was rendered accordingly.

The plaintiff thereupon took his appeal, and assigned for error, the overruling of his exceptions, and giving the instructions asked for by the defendants.

*Hewitt & Newton*, and *Howard;* for the appellant.

*J. Willie*, for the appellees.—So far as relates to the other points in the case, if there were errors in the charge, they are not of a character authorizing a reversal; for the appellees were, at all events, entitled to a verdict and judgment upon the case presented, and these rulings could not have affected the result.

In Ware v. Hylton, 3 Dall. 225, the doctrine on the subject of election, in case of revolution, is thus stated: " On the declaration of independence, it was in the option of any subject of Great Britain to join their brethren in America, or to remain a subject of Great Britain. Those who joined us, were entitled to all the benefits of our freedom and independence; but those

who elected to remain subjects of Great Britain, exposed themselves to any loss that might arise therefrom."

In Inglis v. Trustees, &c., 3 Peters, Rep. 122, it is said: "Our doctrine is, that by withdrawing from this country and adhering to the British government, they lost, or perhaps, more properly speaking, never acquired, the character of American citizens. This right of election, must necessarily exist in all revolutions like ours, and is so well established by adjudged cases, that it is entirely unnecessary to enter into any examination of authorities. The only difficulty that can arise, is to determine the time when the election should have been made;" and the opinion cites, 1 Dall. Rep. 58; 2 Id. 234; 20 Johns. Rep. 332; 2 Mass. Rep. 179, &c.; 2 Kent, Com. 49; 1 Vattel, b. 1, ch. 3, § 33.

In the same case, the rule with regard to the time at which (during the struggle) the election of residence shall take place, is thus referred to: "To say that the election must have been made before, or immediately at the declaration of independence, would render the right nugatory." Inglis had left the country in 1783, six years after the declaration of independence; and the question in that case was, whether he thereby lost his citizenship. (3 Peters, Rep. 123, 124.)

If, then, Musquis became an alien, by thus electing to become a Mexican subject, and abandoning Texas and her cause, he cannot hold or recover land in Texas. It is *elementary* law, that an alien cannot hold land. The common law permits him to purchase, but not to hold as against the State. The result of this is, that he cannot maintain an action which involves title. He might defend when in possession, perhaps, or he might maintain an action where the mere right of possession was in issue, or an action of trespass *quare clausum fregit*, to recover damages for injuries to property claimed and possessed by him; (Coke upon Littleton, 129 b;) but our action of trespass to try title, is intended *to try title;* and though it gives the right of bringing a second suit, it more resembles, in other respects, the writ of right at common law, than the action of ejectment.

An alien being thus circumstanced, in regard to his rights to land, (unable to hold at least against the government,) it would be merely idle to give him a remedy to recover that which he cannot hold.

WHEELER, C. J.—We are of opinion, that the court erred in overruling the plaintiff's exceptions to the defendants' amended answer. The question here presented, was examined and decided in the case of Kilpatrick v. Sisneros, (23 Texas Rep. 113,) at our last session at Galveston, adversely to the grounds taken by the appellee in this case. A re-examination of the subject here, is therefore unnecessary. The revolution did not divest or impair the plaintiff's right of property in the land, which had been granted to him; nor did his removal to Mexico incapacitate him to maintain this action for its recovery.

The first instruction given at the instance of the defendants, is likewise erroneous. It denies the plaintiff's right to maintain the action upon the same ground upon which the court overruled the exceptions to the plea.

It is insisted for the appellees, that these erroneous rulings do not require a reversal of the judgment, for that the facts of the case bring it within the principle of the decision of this court, in the case of Guilbeau v. Mays, 15 Texas Rep. 410; and upon the authority of that case, the defendants were entitled to the judgment which was rendered, notwithstanding the errors in the ruling and charge of the court.

But it must be observed, in the first place, that the ruling of the court upon the plea, made it manifest to the plaintiffs, that according to the opinion of the court, they must fail in their action, on account of the supposed alienage and incapacity of the plaintiff to sue, whatever evidence they might have it in their power to produce, touching the registry of their grant, or notice of it to the subsequent grantee. They may have been deterred by this ruling, from producing all the evidence they would otherwise have produced upon that branch of the case, seeing that it would be of no avail. Moreover, the charge of the court

went farther than the decision in Guilbeau v. Mays warranted, in holding, (in the 5th instruction,) that the want of registration in the county, was sufficient of itself to postpone the plaintiff's grant to the subsequent location and survey of the defendants. This is contrary to Guilbeau v. Mays, and also to the case of Byrne v. Fagan, since decided. (16 Texas Rep. 391.)

There can be little doubt that these rulings controlled the verdict of the jury, and that they were thereby prevented from passing upon or considering the evidence, upon which it is now insisted the defendants were entitled to a verdict and judgment in their favor. Under these circumstances, we think it would be going too far to affirm the judgment, upon evidence here relied on for an affirmance, when its decision below appears to have been controlled by rulings of the court, which we deem to have been erroneous.

As the evidence upon another trial may be different, it is unnecessary to decide how far the evidence upon the former trial should be held to bring the case within the decision in Guilbeau v. Mays. We are of opinion, that the judgment be reversed, and the cause remanded for a new trial.

Reversed and remanded.