ALLEN et al. v. WEST LUMBER CO. et al.
(No. 552.)

(Court of Civil Appeals of Texas. Beaumont.
May 7, 1920. Rehearing Denied
July 1, 1920.)

1. Public lands �köä209—Under Mexican colonization law, title abandoned only by abandonment of country.

Under the colonization laws of Mexico, in force in Texas in 1835, a legal title to granted lands could be abandoned only by abandonment of the country.

2. Public lands �köä209—Judicial inquiry necessary to ascertain forfeiture of Mexican lands by abandonment.

In all cases except where the grantee of land under the colonization laws abandoned the realm, the laws of Mexico in 1835 required that the forfeiture of his land by him be ascertained by judicial inquiry.

3. Public lands �köä209—Abandonment of lands can be raised only by state, not by party in trespass to try title.

The issue of abandonment of lands granted under the colonization laws of Mexico can be raised only by the state, and not by defendants in trespass to try title brought by the successors of the grantee of such lands from Mexico.

4. Public lands �köä202—Mexican grant cannot be attacked in trespass to try title for nonresidence.

The grant of lands to plaintiffs' predecessor under the Mexican colonization laws cannot now be attacked by defendants sued in trespass to try title on the ground that such predecessor did not live in the colony where he was granted lands.

5. Public lands �köä175(2), 175(7)—Priority of surveys determined by time' validly ordered survey made.

Since a mere survey, without an order of survey, is not a legal appropriation of the land and does not sever it from the mass of the public domain, where A. and M. leagues conflicted, and the M. grant was issued by virtue of an application dated January 16, 1835, the A. by application dated May 28, 1835, the order of survey of the A. league was dated May 29, 1835, and of the M. league September 1, 1835, the field notes of both surveys were dated June 1, 1835, and the M. title issued October 8, 1835, and the A. title October 13, 1835, the A. title to the conflicting portion was superior to the M. title, because appropriated under valid surveys, based on proper applications and orders for survey, prior to the time the order for the survey of the M. survey was made, notwithstanding formal title to the M. was issued prior to title to the A. league.

Appeal from District Court, Polk County; J. L. Manry, Judge.

Suit by Fannie M. Allen and others against the West Lumber Company and others. From judgment for defendants, plaintiffs appeal. Affirmed in part; reversed and rendered in part.

W. L. Dawson, of Mission, and Thos. J. Baten and Collins & Morris, all of Beaumont, for appellants.

Baker, Botts, Parker & Garwood, of Houston, and Feagin, German & Feagin, of Livingston, for appellees.

WALKER, J. This suit was instituted in the ordinary form of trespass to try title

by Fannie M. Allen and the other appellants, in the district court of Polk county, to recover from the West Lumber Company and the other appellees the James Morgan league of land in Polk county, Tex. The case was tried by a jury on the following special issues:

Issue No. 1: "Was or was not the James Morgan who resided at Morgans Point, Tex., the James Morgan to whom the league of land in controversy was granted?" (To which the jury answered, "He was.")

Issue No. 2: "Did or did not the said James Morgan falsely and fraudulently represent himself to be a colonist in the enterprise of Jose Vehlein, with the intent of procuring the grant of land in controversy?" (To which the jury answered, "He did not.")

Issue No. 3: "Did or did not James Morgan of Harris county abandon the league of land involved in this controversy?" (To which the jury answered, "He did.")

On this verdict judgment was rendered for appellees. Appellants filed a motion, after the return of the verdict, asking that judgment be rendered in their favor, which motion was overruled, and to which appellants excepted and have appealed from the judgment rendered against them in this case.

Title was issued to James Morgan October 8, 1835, as a colonist of Jose Vehlein's Colony, under the contract made with the Supreme Government of Mexico, December 21, 1826. Appellees (defendants below) claimed to hold under a James Morgan of Copiah county, Miss., and admitted that they did not claim under the James Morgan of Morgans Point, to whom the jury found that the title had issued. It was further admitted by all parties that this James Morgan lived at Morgans Point in Harris county, Tex., from 1831 until his death in 1866, and the record clearly establishes the fact that he did not abandon his home at Morgans Point at any time during this period.

In connection with the third issue which we have above given, the court charged the jury as follows:

"At the time the league of land in controversy was granted, in 1835, the law was if a man be dissatisfied with his immovable estate and abandoned it, corporeally, with the intention that it shall no longer be his property, his interest therein ceased."

Appellants, by proper assignments, challenge the correctness of this charge. Their assignment is that—

"Under the law one having once obtained a legal title to land in Texas could not abandon the same, without an abandonment of the realm."

In Sideck v. Duran, 67 Tex. 256, 3 S. W. 264, 267, Judge Gaines quoted from the Partidas, as follows:

"If a man be dissatisfied with his immovable estate and abandons it, immediately he departs from it corporeally, with the intention that it shall no longer be his, it will become the property of him who first enters thereon."

And in commenting on the issue of abandonment, under the laws of Spain and Mexico, Judge Gaines said:

"It is to be remarked that there are numerous decisions of the court holding that the settler or his purchaser did not forfeit his land by the mere fact of an abandonment of possession; but we think none can be found that, under the laws of Mexico, a title to land was not divested by ceasing to occupy it with the intention of relinquishment. This is conclusive of the case."

But he was not content to rest his opinion on this statement of the law. He further said:

"But it may be remarked that if the rules of the common law were to be applied to the transaction, that Sideck's conduct was such as to estop his heirs from setting up claim to the land against those claiming under Blanco. Mayer v. Ramsey, 46 Texas, 371; Harrison v. Boring, 44 Texas, 269; Lamar county v. Clements, 49 Texas, 347."

It seems that this question has been before our courts many times, and, unless the Sideck Case holds to the contrary, all authorities make a clear distinction between the law of abandonment of Spain and Mexico, as stated in the Partidas, and the colonization laws of Mexico in force in Texas. In the early case of Holliman v. Peebles, 1 Tex. 673, Chief Justice Hemphill quoted article 30 of the colonization laws of the state of Coahuila and Texas, as follows:

"New settlers, who shall resolve to leave the state, to establish themselves in a foreign country, shall be at liberty to do so, with all their property; but, after thus leaving they shall no longer hold their land; and should they not have previously disposed of the same, or should not the alienation be in conformity with art. 27, it shall become entirely vacant."

Contrasting the law of Texas and Coahuila with the laws of Mexico, he said:

"The only distinction between the estate of the colonist under the laws of Mexico, or the state of Coahuila and Texas, and of the reservee, is that the former, after the performance of certain conditions, had the power of alienating the land; but they both held with the limitation and condition that their titles, on abandonment, *one of the premises, the other of the country* [italics ours], should become null and void, and that their lands should revert to the grantor, and become a part of the public domain."

Thus the Chief Justice clearly distinguished the colonization laws of Texas from the laws of the mother country. This case has been cited many times by our Supreme Court without criticism. In Russell v. Randolph, 11 Tex. 460, Judge Lipscomb said:

(223 S.W.)

"If, however, it [referring to the title issued to Edward Russell] was valid when it was issued, it could only be reannexed to the public domain, by a forfeiture or by abandonment of the country. * * * If, however, when he left Texas for his native domicile, it was with the intent to remain there, he would forfeit his domicile here and with it the land acquired would by abandonment of the country revert to the public domain."

In support of this proposition he cited Holliman v. Peebles, supra, and Hancock v. McKinney, 7 Tex. 384.

In Bowmer v. Hicks, 22 Tex. 155, Chief Justice Wheeler thus discussed the law of abandonment:

"In the early cases of Holliman v. Peebles, 1 Tex. 673, and Horton v. Brown, 2 Tex. 78, it was decided that, under the colonization laws, and particularly the fifteenth article of the national law of the 18th of August, 1824, and the thirtieth article of the law of the state of the 24th of March, 1825, the effect of leaving the country and becoming domiciled in a foreign government, after having obtained a grant, was to defeat the estate of the grantee, and restore the land to the mass of vacant public domain; and that it might again be granted, without judicial inquiry to ascertain the fact of abandonment of the country by the first grantee. The same doctrine has been held in a subsequent case. Yates v. Iams, 10 Tex. 168. But this consequence has been held not to attach to any other act of the grantee, by which he forfeited the title to his land; or to the nonperformance of conditions subsequent, annexed to the grant."

Judge Sayles, in his Real Estate Laws of Texas, thus states the law of abandonment under the colonization laws of Mexico:

"As heretofore stated, grants of land under the colonization law of Mexico were forfeited by an abandonment of and removal from the country, and such forfeited lands could be regranted by the political authorities. Holliman v. Peebles, 1 Tex. 709; Horton v. Brown, 2 Tex. 78; Yates v. Iams, 10 Tex. 168; Summers v. Davis, 49 Tex. 541. * * *
"The forfeiture of his land without a judicial proceeding and judgment did not result from any other act of the grantee."

Judge Sayles, under four distinct articles, cites Sideck v. Duran, and under article 101 cites this case as authority for the proposition that—

"Under the laws of Spain and . Mexico as they existed in 1834, the owner of land lost his title to it when he ceased to occupy it with the intention of relinquishing his claim thereto."

Though thoroughly acquainted with the Sideck Case, it was not his opinion that it modified or changed the announcement of the law as given in Holliman v. Peebles, Bowmer v. Hicks, and other cases cited by us.

[1] It seems to us that these authorities clearly sustain the legal proposition that, under the laws in force in Texas in 1835, a legal title could only be abandoned by abandonment of the country. And it being admitted in this case that James Morgan, the original grantee, never abandoned his home at Morgans Point, Harris county, Tex., but lived there continuously from 1831 until his death in 1866, there was no basis in this record for the submission of the third special issue. See, also, Phillips v. Watkins Land Co., 90 Tex. 195, 38 S. W. 270, 470.

[2] However, if we should be in error in our statement of the law of abandonment, even under the Sideck v. Duran Case, the court was in error in the submission of this issue. In all cases except where the grantee abandoned the realm, the law required that the forfeiture be ascertained by a judicial inquiry. Bowmer v. Hicks, supra; Hancock v. McKinney, supra; White v. Holliday, 11 Tex. 606; Rivers v. Foote, 11 Tex. 662; Johnston v. Smith, 21 Tex. 722; Luter v. Mayfield, 26 Tex. 325; Howard v. Colquhoun, 28 Tex. 134; Airhart v. Massieu, 98 U. S. 491, 25 L. Ed. 213.

This principle is stated as follows by Judge Sayles in his work above referred to:

"Art. 115. Forfeiture of Land for Nonperformance of Conditions.—The forfeiture of his land without a judicial proceeding and judgment would not result from any other act (referring to abandonment of the country) of the grantee, or from the nonperformance of conditions subsequent, annexed to the grant, but in these cases the forfeiture must be ascertained by judicial inquiry in some court provided by law, in order to divest the title of the grantee before the state can resume the grant or otherwise appropriate the land"—citing the cases above given by us.

Immediately following the above quotation from Bowmer v. Hicks, supra, Chief Justice Wheeler cites Swift v. Herrera, 9 Tex. 263, Hancock v. McKinney, supra, Rivers v. Foote, supra, and says:

"In these cases, it was held that the forfeiture must be ascertained by judicial inquiry, in some mode to be provided by law, in order to divest the title of the grantee, before the state could resume the grant, or otherwise appropriate the land."

Judge Gaines thus states the facts in Sideck v. Duran:

"This was an action of trespass to try title, brought by appellants as heirs of Antonio Sideck against Juan Duran and M. L. Labosky to recover a league of land in Refugio county. * * * On the 20th day of April, 1881, Antonio Sideck made application * * * for the land. His application was favorably reported by the ayuntamiento with a statement that the grant applied for lay without the littoral leagues. The order granting the application dated July 27, 1831, directed that the commissioner of the colony to which the land belonged, or in case it belonged to no colony, the first or only alcalde of the municipality should put the applicant in possession and extend the

final title, which was accordingly done on the 4th of August, 1832, by the alcalde of Goliad.

"On the 27th day of October, 1834, Sideck made application to the commissioner * * * stating that he was convinced that his previous grant was within the littoral leagues, and that the 'judge' (meaning the alcalde) had no authority to make it, and prayed that the commissioner would issue to him 'a formal title to land upon the same river' 'according to the surveys recently made,' etc. * * * His application was favorably indorsed by one of the contractors, and the final title extended all on the same day to a league lying or the other side of the river from his original grant. On October 29, 1834, Manuel Blanco * * * made application to the commissioner * * * for the league in controversy, describing it as 'the land which was owned by Antonio Sideck, and has been relinquished by him'; and on the same day final title was issued to him for the land applied for. * * * We think the commissioner must have considered that Sideck had abandoned his claim to the land in controversy when he extended the Blanco title, and that he was warranted in that conclusion. For these reasons we are of the opinion that Sideck abandoned the land intending to relinquish his claim to it; and that, under the law then in force, he lost whatever title he then had, and that therefore his heirs cannot recover."

Thus, in resting his opinion on the act of the commissioner in declaring the forfeiture, Judge Gaines recognized that a judicial inquiry was necessary to determine that fact.

[3] The court erred in overruling appellants' exceptions to the special plea of appellees raising the issue of abandonment. This issue can be raised only by the state. Howard v. McKinney, supra; Kilpatrick v. Sisneros, 23 Tex. 113; Musquis v. Blake, 24 Tex. 461.

In Kilpatrick v. Sisneros, supra, Chief Justice Wheeler said:

"The special defenses pleaded and relied on are: (1) That the plaintiffs are aliens and incapable of maintaining this action; and that they forfeited their title by leaving the republic and settling in Tamaulipas, in 1836 and 1837, and the land became vacant. * * * First, as respects the plea of alienage and abandonment of the country. The plaintiffs were residing in Texas at the date of the declaration of independence (the 2d of March, 1836), but afterwards went west of the Rio Grande, some of them in 1836, and others in 1837, and did not return to the state until 1847 or 1848. Did they thereby become, and are they to be deemed aliens to this government? We think not. They may have forfeited their right of citizenship and their title to their lands, but until the forfeiture has been ascertained and adjudged by some proceeding, to be authorized by law for that purpose, their civil status is not changed, nor their rights of property divested. This is the doctrine which has been uniformly maintained by the decisions of this court upon this subject, and it is believed to be in accordance with the settled doctrine of other courts in similar cases."

On the trial of this cause, appellants made the following admission:

"It is admitted by counsel for the plaintiffs herein that Morgans Point, in Harris county, Tex., is not now and never was in Vehlein's Colony, but that the headright covered by the James Morgan league in Polk county is in Vehlein's Colony and has always been.

"It is admitted by counsel for plaintiffs that James Morgan, the grandfather of the plaintiffs in this suit, and the James Morgan who has been proven as having resided at Morgans Point, in Harris county, Tex., was the original grantee of a league and labor of land in the limits of Stephen F. Austin's Colony, as one of Stephen F. Austin's colonists, and that said league was located in Jackson county, Tex., granted to him in 1831, and that he afterwards sold it."

[4] Under this admission, appellees contend that plaintiffs were not entitled to recover. We do not agree with this proposition. This grant to Morgan cannot now be attacked by appellees on the ground that he did not live in Vehlein's Colony. Burleson v. McGehee, 15 Tex. 375; Howard v. Colquhoun, supra; Luter v. Mayfield, supra; Johnston v. Smith, supra.

In Howard v. Colquhoun, the Supreme Court said:

"Many authorities can be cited against the right of a third party to plead fraud in the procurement of a grant issued by legal authority, and that such objections to the grant can only be taken by the government in her own name in proceeding directly to annul the grant, and that these questions are exclusively confined to the government and the grantee; that while the government is content, no person can impeach the grant, and especially one who has no title or claim whatever to the land, as appears to be the condition of the appellant in this case, who appears to be simply an intruder upon the premises, without any pretense of claim whatever. He pleads a claim, but proves none."

[5] The J. W. Moreland, L. B. Dikes, H. W. Augustine, and J. D. Nash surveys are in conflict with the James Morgan; the Dikes and the Nash being senior surveys, and the Moreland and the Augustine junior surveys. The Moreland conflict covers the Dikes conflict. Appellants concede to appellees the Moreland conflict under the claim of limitation. The Nash survey, being senior, is superior to appellants' title. The Morgan grant was issued by virtue of application dated January 16, 1835; the Augustine by application dated May 28, 1835. The order of survey of the James Morgan league is dated September 1, 1835. The order of survey of the Augustine league is dated May 29, 1835. The field notes of both surveys are dated June 1, 1835. Title issued to James Morgan October 8, 1835, and the Augustine title issued October 13, 1835. Under these facts, appellees advance the following counter proposition:

"The title of appellees to that part of the * * ' * H. W. Augustine league in conflict with the James Morgan league is superior to the Morgan title, because the same was appropriated under valid surveys, based on proper applications and orders for survey, prior to the time of the order for survey of the James Morgan survey was made; and the same having been thus appropriated, the title thereto is superior, although formal title to the Morgan may have been issued prior to title to the Augustine league."

In support of this counter proposition, they cite Howard v. Perry, 7 Tex. 259; Compton v. Hatche, 135 S. W. 1054; Mohler v. Welge, 20 S. W. 850. As we construe these authorities, they sustain this counter proposition. In Howard v. Perry, Judge Wheeler said:

"A mere survey, without an order of survey, was not a legal appropriation of the land. It did not sever it from the mass of the public domain."

Appellees close their brief with the following counter proposition:

"If this case should be reversed on appeal, it should be remanded for another trial, as appellees are not in position to have the court pass upon the sufficiency of the evidence to support the finding of the jury upon the two other controverted issues"—citing Houston Oil Co. v. Billingsley (Com. App.) 213 S. W. 248.

They make no statement under this proposition; but, from an examination of the record, it seems to us that the jury could have reached no other conclusion than that the land was granted to James Morgan of Morgans Point. Appellees, in support of this counter proposition, as to the second issue, should have made a statement from the record, showing wherein the answer of the jury was not supported by the testimony. As they failed to do this, this counter proposition is overruled.

In closing our discussion of this case, we would say that we have examined carefully the testimony offered by appellees on the issue of abandonment, and in our opinion, if the court correctly charged the jury as to the law, the record sustains the verdict. From what we have said, it follows that the trial court erred in not rendering judgment for appellants for all of the James Morgan survey not in conflict with the surrounding surveys, and we here affirm the judgment of the trial court awarding to the appellees that portion of the James Morgan survey in conflict with the surrounding surveys, and, as to the balance of the James Morgan survey, we reverse the judgment of the trial court and render the same in favor of appellants.

In part affirmed, and in part reversed and rendered.