HOUSTON °OIL COMPANY OF TEXAS ET AL. v. SARAH L. HAYDEN ET AL.

No. 2142. Decided March 22, 1911.

**1.—Patent—Land Certificate—Judgment—Heirs—Stale Demand.**

A patent to the heirs of one entitled to a land certificate issued to such heirs on a judgment establishing the right thereto as sole heir of an applicant whose claim had been rejected by the board of commissioners created to detect fraudulent land claims (Acts of February 4, 1841, and January 29, 1848) constituted a grant of the legal title to the heir on whose recovery such certificate was issued. While the judgment did not preclude other heirs, not parties to the suit, from maintaining action against such grantee to establish their equitable interest in the land, it became conclusive against them by the lapse of long time without assertion of their claim. (Pp. 176-180.)

**2.—Record of Title—Innocent Purchaser—Good Faith.**

Valuable consideration, absence of notice, and good faith, must concur to constitute an innocent purchaser of land. Good faith is ordinarily inferred from proof of the other two elements; but it does not exist where the intending purchaser merely speculated on the absence of proper record evidence, and remained purposely ignorant of the existence of facts which he would have learned had he been scrupulous about the rights of others. (Pp. 180-182.)

**3.—Same—Inadequacy of Price—Charge.**

Inadequacy of the price paid, though not in itself defeating the claim to be an innocent purchaser, may be considered in connection with other circumstances in determining the question of good faith. A charge that it was not necessary to such claim that the purchaser paid full value is here held misleading in ignoring its bearing on the issue of good faith, and properly refused. (Pp. 182, 183.)

**4.—Possession—Notice.**

Evidence as to possession of land by tenant under adverse title, held not sufficient to charge a purchaser with notice of such claim as matter of law. (Pp. 180-183.)

**5.—Innocent Purchaser—Equitable Title.**

A mere beneficiary of an equitable title held in trust by another can not maintain the defense of innocent purchaser unless the holder of the title took as such. (P. 182.)

**6.—Innocent Purchaser—Good Faith.**

Evidence considered and held insufficient to establish conclusively the existence of good faith in a purchaser of land as against a superior but unrecorded title, and to support a finding adverse to him on such issue. (Pp. 180-183.)

Both appellants and appellees obtained writs of error on a judgment modifying, reversing and rendering in part, and in part affirming the judgment for plaintiffs in the trial court from which appeal was taken.

*Denman, Franklin & McGown, Lanier & Martin, H. O. Head, Taliaferro & Nall,* and *Dies, Singleton & Dies,* for plaintiffs in error.—The

only certificate ever authorized to be issued for any land to which Washington R. Griffin may have been entitled was the certificate authorized and adjudicated by the hereinbefore recited decree. This decree adjudicated and authorized a certificate to Jackson H. Griffin, and no one else. The heirs of Washington R. Griffin, if any there be other than Jackson H. Griffin, can not assert nor deraign title through said decree, because the decree does not award any title to any certificate to any one oné save Jackson H. Griffin. The land in controversy was located under the certificate adjudicated in said decree and the patent to the land was issued upon the certificate decreed by said adjudication and located under said decree. However, worded, the patent could confer title upon no one save the party to whom the certificate was awarded by said decree. It must follow, therefore, as a logical and necessary conclusion that neither under said decree nor the certificate issued thereunder nor the survey made under the certificate nor the patent granted upon the certificate, any of the brothers and sisters of Washington R. Griffin, save Jackson H. Griffin, acquired any title to the land in controversy. 2 Gammel's Laws, 171; Burkett v. Scarborough, 59 Texas, 495; Fleming v. Gibony, 81 Texas, 428; Davis v. Bargas, 88 Texas, 664; McPhail v. Burris, 42 Texas, 146; Smith v. Walton, 82 Texas, 548; Shinn v. Hicks, 68 Texas, 277; Styles v. Gray, 10 Texas, 504; Hardiman v. Herbert, 11 Texas, 638; Burleson v. McGehee, 15 Texas, 375; Johnston v. Smith, 21 Texas, 723; Clifton v. Hewitt, 56 S. W., 132.

*Lemuel D. Lilly, John L. Little, B. L. Aycock* and *Smith, Crawford & Sonfield,* for defendants in error.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

The history of this litigation may be seen in 44 Texas Civ. App., 746, and 125 S. W., 993. The writs of error by which the case is brought to this court are from the decision last cited.

Besides Sarah L. Hayden and others as plaintiffs, and the Houston Oil Company of Texas and others as defendants, there were two sets of interveners, viz.: P. C. Thompson and those acting with him, who will be referred to as the first interveners, and S. M. Kidd and those acting with him, who will be called the second interveners.

The controversy is over the title to the tract of land now in Hardin County, but formerly in Liberty County, which was patented in June, 1856, to the heirs of Washington R. Griffin "by virtue of a decree of the District Court of Liberty County rendered June 1, 1848." A copy of the decree on which the patent was based was produced from the General Land Office and is as follows:

" 'The State of Texas,
    County of Liberty. ss.

District Court, May Term, 1848.

" 'Whereas, Jackson H. Griffin filed his petition in the District Court for the county of Liberty, Republic of Texas, at the September Term, A. D. 1841, thereof in conformity with an Act entitled, "An Act, supplementary to an Act to detect fraudulent land certificates, and to

prove for issuing patents to legal claimants," approved February 4, 1841, alleging that Wm. M. Logan, administrator of Washington R. Griffin, deceased, obtained from the Board of Land Commissioners for the County of Liberty, a certificate for one-third of a league of land, dated the first day of February, A. D. 1838, and number 15. That the Board of Commissioners appointed under an Act entitled "An Act to detect fraudulent land certificates, and to provide for issuing patents to legal claimants," passed January 29, A. D. 1848, rejected said certificate—said plaintiff further alleged that he was the only heir of said Washington R. Griffin, and a jury being duly empanelled, tried and sworn to try the issue therein between said plaintiff and the State of Texas, and after hearing the evidence and being fully charged, retired, and after consultation brought in the following verdict, to wit: "We, the jury, find for the plaintiff one-third of a league of land. James M. Clayton, foreman."

" 'These are therefore to certify that said Jackson H. Griffin, at a District Court holden in and for the county of Liberty, State of Texas, on the first day of May, A. D. 1848, recovered a verdict for one-third of a league of land and that judgment was duly entered up thereon in favor of said Jackson H. Griffin for one-third of a league of land, as aforesaid.

" 'To certify all of which, I, George S. Loving, clerk of the District Court in and for the county of Liberty, State of Texas, have hereunto set my hand and affixed the seal of the District Court this third day of May, A. D. 1848.

George S. Loving, Clerk,
(Seal)                                    By Chas. C. Lund, Deputy.
Approved, C. W. Buckley, Judge Seventh Judicial District.
    J. R. Griffin, 1 File 278.   Liberty First Class.
Decree of District Court of Liberty County.
    Washington R. Griffin, deceased.   Filed Dec. 17, 1853.
    Mgl. 6490.   Gilkland.
    Liberty District Court, May Term, 1848.' "

The plaintiffs in this case, Mrs. Hayden and others, claim under a chain of title from Jackson H. Griffin, mentioned in the decree, down to their ancestor Peter Hayden, two of the deeds in which, viz.: one from Jackson H. Griffin to C. C. Lund and the other from Lund to Clements and Hayden were not produced, but were established by the verdict of the jury upon evidence which tended to prove them and which was held by the Court of Civil Appeals to be sufficient. The first of these deeds was executed prior to 1856 and the latter on the 16th day of October of that year, but, if they were ever recorded, the record was destroyed and never restored prior to the conveyance by the heirs of Jackson H. Griffin, stated below, under which defendants claim. The defendants claim under Jackson H. Griffin by deed from his heirs to C. M. Votaw, September 5, 1896, deed from Votaw to W. L. Moody, April 27, 1897, deed from Moody to John H. Kirby, March 21, 1901, after this suit was commenced against Kirby and Moody, and by conveyance from Kirby pending suit to the Houston Oil Company.

The first interveners are the heirs of persons who were brothers and sisters of Washington R. Griffin of the full blood. Jackson H. Griffin was his half brother and Scythia Griffin his half sister. The second interveners are the heirs of Scythia. Under the law of the Republic of Texas, existing at the death of Washington R. Griffin, those of the full blood inherited to the exclusion of those of the half blood.

After the first interveners came in, they and the plaintiffs settled their controversy, agreeing upon a division of the land, and prosecuted the action in the assertion of both the titles against the defendants and the second interveners. All the issues of fact were found in their favor by the jury upon special issues and judgment was rendered for them for the land and for a sum of money against Kirby for the value of the timber cut.

In the Court of Civil Appeals the judgment as to the land was modified in some respects not now questioned and otherwise sustained, and the judgment for money against Kirby was reversed and judgment was rendered in his favor as to that claim, for the reason that the evidence showed no liability on his part.

The plaintiffs and first interveners have joined in one application for writ of error and the defendants in another. The decision we shall make upon the latter will render the former immaterial except in so far as it complains of the judgment in Kirby's favor on the claim for timber cut. We deem it unnecessary to say more than that the statement made by the Court of Civil Appeals affecting that question shows the action of the court with respect thereto to have been correct.

The first question arises from the attack made by counsel for the defendants upon the holding of the Court of Civil Appeals that the first interveners had title superior to that of Jackson H. Griffin, their proposition being that the decree of 1848 conclusively establishes his title to the certificate. We are of the opinion that this contention is sustained by the decisions of this court, those more especially in point being Burkett v. Scarborough, 59 Texas, 495, and Davis v. Bargas, 88 Texas, 662. In the former case the question was as to the effect of a certificate issued by one of the Boards of Land Commissioners to persons named and stated to be the heirs of another, who was entitled to the land by virtue of a certificate previously issued, and of a patent to the heirs of such other based upon such action of the Land Commissioners. The original record in that case shows that the trial judge found as a fact that those designated by the Board of Land Commissioners as heirs were not such, but that another person was the heir of him who was originally entitled to acquire the land, the precise condition existing in this case. That holding was reversed by this court, the opinion saying as to the conclusiveness of the action of the Board:

"Many previous decisions of this court have been to the effect that after the very great lapse of time that has transpired since these early transactions took place, the action of these special tribunals is no longer open to inquiry in ordinary suits between individuals in which such questions may arise collaterally. The security of property and the repose of society demand the consistent maintenance of this principle. If it were departed from, no man could rely upon any ancient title. Age and acquiescence, instead of giving strength and confidence

to a title, would weaken it. The law, in its principles and practice, is eminently conservative. Rights that rest upon the past adjudications of early tribunals and officials must be upheld and respected."

As to the legal effect of the patent issued generally to 'heirs of the original party the court said:

"The patent which issued was based on this certificate, and the heirs of Mariana Moro, Jr., referred to in it, must be taken to be the persons who are decided to be such heirs by the issuance of the certificate to them upon which the patent is founded, and without which it could have no existence."

In Davis v. Bargas, supra, the question certified was whether or not the finding of one of such Boards, that the person to whom it issued the unconditional certificate had acquired title to the conditional certificate by assignment from the original holder thereof, was evidence against the heirs of the original holder of the fact of assignment; and the question was answered in the affirmative. The certificate from the Court of Civil Appeals did not call for a ruling as to the conclusiveness of the evidence, and, hence, there was no expression of opinion as to that, but the decision is based upon the same doctrine as that of Burkett v. Scarborough. That doctrine, in its application to different facts, had previously been thoroughly established by other decisions, as shown in the cases cited in Burkett v. Scarborough, but had not before been carried so far.

We find it impossible to give to such a decree as that here in question less effect than has thus been ascribed to the actions of the Boards of Land Commissioners. The proceeding in court was authorized to secure the very relief which the party had not secured from such a Board, viz.: the establishment of his right to the certificate and, through it, to the land for which it called, and the scope of the inquiry in court in his favor was not narrower than that which the Boards were allowed to make. (Gammell's Laws, p. 635.) One fact to be determined, whether the investigation took place before a Board or a court, was the right of the party seeking the decree to the certificate claimed, and that fact was expressly ascertained by the decree in question.

The views which have been laid down in the opinions referred to are not to be justified upon the ordinary principles which determine the effect of judgments *inter partes*. According to those principles, judgments are not binding upon, and can not take away the rights of, any persons except parties or privies. But the purpose of the special proceedings, authorized by the laws under which that in question was had, was to ascertain who were entitled to receive from the Republic lands not yet granted to any one. No person could procure such a grant until his right to it had been established in the prescribed way. The ascertainment that one was entitled to it, and the extension of the patent to him, identified him, not another, as the grantee. Hence, we think the decisions are to be understood as meaning that by such proceedings the *fact that the grants were extended* to the persons ascertained to be the owners of the rights was conclusively established by finding that he was entitled to the certificates, and that others whose rights had not thus been determined could not be regarded as the recipients of such

titles. In other words, proof at this time that a grantee, whose title is thus shown, was not, and that others were, entitled to the land does not alter the fact that he, not they, received it. Consistently with this view, it may be true that in a case like this the true heirs of the party originally entitled could, at the proper time, have shown the facts and have charged the person who received the title as their trustee, and that the decree would not have precluded them in a proceeding brought for that purpose. Hence, the Court of Civil Appeals may have been correct in holding that the decree does not conclusively determine the fact of heirship for all purposes, but that proposition does not reach the difficulty. It remains true that the full brothers and sisters of Washington R. Griffin did not, and that Jackson H. Griffin did, receive a grant of this land, and that it is now much too late for them to establish any equitable right under that grant as against purchasers from him. Carlisle v. Hart, 27 Texas, 350. Ordinarily a patent to the heirs of a deceased person conveys the title to those persons who are the true heirs at law, but under the decision in Burkett v. Scarborough, where the certificate on which the patent is based shows that it was granted by a Board or a court, to particular persons as such heirs, the patent is to be regarded as a grant to those persons.

This disposes of the claims of all the interveners and it remains to determine which is the superior title under Jackson H. Griffin, that of plaintiffs or that of defendants. That of the plaintiffs, being the elder, must, of course, prevail unless the defendants have shown that either Votaw or Kirby was an innocent purchaser. Counsel for defendants contend that the evidence conclusively shows that both were. This makes proper a fuller statement of the facts concerning their purchases.

From 1856, when, according to the finding of the jury, Peter Hayden became the owner of the land under purchase from Jackson H. Griffin, until about the time of the conveyance by the heirs of the latter to Votaw in 1896, Hayden had been the only active claimant. He had paid all taxes on the land for most, but not all, of the intervening years, no other claim appearing. In 1887 he secured a written contract of tenancy from a squatter named Loftin, who was living on but not claiming the land, the contract restricting its operation to a year unless renewed which was not done. Towards the end of 1888 Loftin declined to renew the contract and moved to a home which he had purchased on an adjoining tract, but continued to cultivate a field which was open on the land in controversy, until the house was occupied by his son-in-law, Swearengen, who lived there for several years and left, when Loftin resumed and kept up the cultivation of the field until Votaw purchased and for some years thereafter. The testimony of Loftin is extremely unsatisfactory upon the question whether or not he and Swearengen held possession for Hayden, some of his statements being clearly to the effect that he did not after 1888, and that Swearengen did not at any time, and other statements tending to show that at all times both so held. This question was pointedly put to the jury by the charge of the trial judge and answered in favor of plaintiffs. The Court of Civil Appeals, apparently overlooking the statements of

the second kind referred to, held that the evidence was insufficient to justify the finding, or even the submission of the question.

It is therefore apparent, in this state of the record, that we can not hold that there was a possession under Hayden when Votaw purchased, sufficient of itself to charge him with notice; and the other facts touching the question must be examined.

It appears that the power of attorney from the heirs of Jackson H. Griffin to Hugh Jackson, made in 1896, under which the deed to Votaw was executed, contained no reference to the land in controversy but was a general one "to enter upon, take possession of, sue for, recover from, or compromise with adverse claimants, all lands in which the makers owned any legal or equitable interest in Hardin County," and to sell all land "recovered or discovered" by the attorney and to execute quitclaim or special warranty deeds to such lands, with other incidental powers. It conveyed to Jackson an undivided half interest in all lands, claims, rights, titles and, interests recovered by him, etc. The deed made to Votaw was a special warranty deed for the land. Votaw testified that he was told by Jackson, the attorney in fact who was also a reputable attorney at law, that he, Jackson, thought his clients had a good title to the land; that he, Votaw, paid for the 1476 acres, $375 cash, knowing nothing of the Hayden or of any other adverse claim; that "at that time $375 for 1476 acres of land was not an unusual price, and judging from other sales that were made during those times, it was not an unreasonable price and might be considered a fair price." He further testified that he employed Pedigo to examine the land and was told by him that there was an old improvement on it, but was not told of the Hayden claim nor that the land was occupied. Pedigo who was employed to examine the land for Votaw testified that he found either Loftin or Swearengen occupying it and so told Votaw; that he knew of the Hayden claim but did not remember whether or not he told Votaw of it, and that the land was then worth $5 or $6 per acre. Hugh Jackson testified that according to his best recollection, his information was that the land belonged to the heirs of the original grantee; that this information came from Votaw, who asked him if he knew the heirs and if he could get a power of attorney from them, saying he wanted either to get a power of attorney or to buy the land; that thereupon he, Jackson, corresponded with the heirs and they executed the power to him because they did not know Votaw and would not give it to him; that the witness had no knowledge of the records of Hardin County and made no examination for, or report to, Votaw as to the sufficiency of the title. There are, perhaps, other facts that might be referred to, but we think this statement is sufficient to show that this court can not hold that Votaw is conclusively shown to have been an innocent purchaser, if, indeed, the facts would warrant such a conclusion.

To constitute him such, three elements were essential—valuable consideration, absence of notice and good faith. (2 Pomeroy Eq., sec. 745.) In many cases the transaction is such that the questions of consideration and notice are practically the only ones, the element of good faith being regarded as present or absent according to the findings on those points. But it is nevertheless an element essential to the pro·

tection given an innocent purchaser and if, in a given case, notwithstanding evidence of the payment of a valuable consideration and of the absence of notice, there remains a question as to the existence of good faith in the transaction on the part of the purchaser, that, too, must be resolved in his favor before the claimed protection can be given. (Id., sec. 762.) Although there be no knowledge of an adverse claim, and no circumstances actually brought to the attention of the intending purchaser pointing to one, he may yet appear to have remained purposely ignorant of facts of which he would have learned had he been scrupulous about the rights of others; the circumstances may show that he has merely speculated on the absence of the proper record evidence of claims, not actually known but suspected by him to exist, by attempting to acquire, through the aid of the registration laws, a title which he does not really believe to be in his grantor. Such, in our opinion, would be a flagrant case of bad faith, and such some of the evidence authorized, if it did not require, the jury to find this case to be. We think also that the jury could well have found that the circumstances shown ought to have excited inquiry which would easily have led to knowledge of Hayden's title. And the consideration, although a valuable one, was, according to the testimony of Pedigo, so inadequate as to suggest for the consideration of the jury the questions as to good faith and notice.

As to Kirby, he was never himself a purchaser before the suit was begun. The transaction in which the deed was executed by Votaw to Moody was such that it would have created a right in Kirby had the title passed thereby, but not such as to put him in the position of an innocent purchaser, conceding that he had no notice of the other title. That transaction was briefly this: Kirby was endorser of a note for $4,000 held by Moody, of which one Moore was the maker. Moody sued both and, by an amicable arrangement, a judgment for the amount was taken, with an agreement that Kirby should pay part of it and have a year's indulgence for the balance secured by the note of himself and another. Votaw had conveyed the land in controversy to Moore in exchange for a stock of goods, and, it was agreed that the land should be conveyed to Moody as security to him as well as to Kirby, the understanding being that in case Kirby had to pay the debt he should be indemnified in that way. Moore thereupon surrendered the deed which had been executed to him by Votaw° and the latter made the deed to Moody, and, when Kirby paid the debt, the deed from Moody to him was executed. This statement makes it evident that Kirby, until the execution of the last mentioned deed, was merely a beneficiary, to the extent stated, of the legal title held in trust either by Moore or Moody, and can not maintain the defense of innocent purchaser unless the holder of such title took as such. Myers v. Ross, 3 Head, 59; Pope v. Pope, 40 Miss., 516; Stevens v. Goodenough, 26 Vt., 676; Willes v. Greenhill, 4 DeG. F. & J., 150.

There is no evidence even tending to prove that either Moore or Moody was an innocent purchaser. The burden to show this was on the defendants. This disposes of the contention based on Kirby's purchase and leaves the defense dependent on that of Votaw. That having been submitted to the jury and found in favor of plaintiffs, it would be

unnecessary to say more concerning it but for a complaint of the refusal of a special charge requested by defendants as follows: "If the jury find from the evidence that Jackson H. Griffin made a deed to C. C. Lund, conveying the land in controversy and that said Lund conveyed the land to Clements & Hayden, and you further find from the evidence that C. M. Votaw when he purchased the land from James and R. C. Griffin (heirs of Jackson H. Griffin) the said Votaw had no actual notice of such deed, if any there was, nor had he knowledge of such facts as would be sufficient to put a reasonably prudent man on inquiry, which if followed up would have led to the discovery of the fact (if a fact) that such deeds had been executed, and you further find that said Votaw paid a valuable consideration for the land, then in such case the defendants would be entitled to recover as against the plaintiffs, unless defeated by plaintiff's claim of title by limitation, and in this connection you are charged that it is not necessary that said Votaw should have paid the full value of the land at the time of purchase, to make him an innocent purchaser for value."

There are two reasons why this charge should not have been given: (1) It does not require, as a requisite of the defense, good faith, the existence or nonexistence of which was one of the prominent questions in this case. (2) Considering the evidence of the gross inadequacy of the consideration paid and the other circumstances attending the purchase, the instruction that the full value of the land need not have been paid, although abstractly correct, would have been misleading to the jury. Such an instruction ought not to be given without explanation in cases of such great inadequacy as some of the evidence tended to show this to have been.

This leads to an affirmance of the judgment.

*Affirmed.*