NATIONAL TRUST & CREDIT CO. v. OLIVER. (No. 364.)

(Court of Civil Appeals of Texas. Beaumont. May 2, 1918.)

1. BILLS AND NOTES ⬤⟲352—BONA FIDE PURCHASERS—TRANSFER FOR COLLECTION.

Where a corporation purchased notes from the original payee under a contract whereby it took no chance of losing on the notes, and only contracted to collect such paper as it could, it was not an innocent purchaser for value before maturity.

2. BILLS AND NOTES ⬤⟲315—ACTIONS—DEFENSES—FAILURE OF CONSIDERATION.

Where a payee transferred notes to a corporation which held them as a collection agency, the uncollected notes to be returned to payee, the maker could defend against its suit on the ground that payee had failed to make good its guaranty on the piano for which the notes were given, and still retained the instrument.

Appeal from Harris County Court; Murray B. Jones, Judge.

---

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by the National Trust & Credit Company against C. E. Oliver. Judgment for defendant, and plaintiff appeals. Affirmed.

Campbell, Myer, Myer & Freeman and Rodman S. Cosby, all of Houston, for appellant. Warren & Conn, of Houston, for appellee.

BROOKE, C. J. This is an appeal from judgment of the county court at law No. 2 of Harris county, Tex., in a certain cause wherein appellant, as plaintiff below, sued on two certain promissory notes, each for the sum of $130, dated February 9, 1912, drawing interest at the rate of 6 per cent. per annum from June 9, 1912, one of said notes maturing 20 months and the other 24 months after date, respectively. The notes were executed by the appellee to the Chase & Baker Co., Buffalo, N. Y., and it was alleged by appellant that it had become, for a valuable consideration, before the maturity of each of said notes, the owner of each of said notes without any knowledge of any vice therein as between the immediate parties thereto.

As a defense to the suit, the appellee alleged that the plaintiff was not a bona fide owner and holder of the notes sued upon for value and without notice, and, in fact, the notes belonged to the Chase & Baker Company, of Buffalo, N. Y., and that the Chase & Baker Company's indorsement upon the notes was not genuine, and was not made by said company, or any one authorized so to do; that the plaintiff and the Chase & Baker Company had fraudulently conspired to defeat and anticipate the defendant's defense to the notes sued upon, by pretending to assign same to the appellant; that in fact and in truth plaintiff was merely a collection agent, and was the agent of the Chase & Baker Company for the collection of said notes; that the consideration for the said notes, as well as the other four paid by the appellee, was three player pianos sold by the Chase & Baker Company to the appellee, and for which he had executed the notes paid, as well as the notes sued upon; that the said player pianos were warranted to be mechanically perfect, and to work well; that one of them was defective, and at the request of the Chase & Baker Company the appellee returned the same to said company in the early part of 1913; that the said company had failed and refused to make good its warranty on said piano and return the same to the appellee, and therefore the consideration for the notes sued upon had failed; that before the notes sued upon were due, the appellee notified the said Chase & Baker Company and the appellant that he would not pay the said notes because he had not received the piano for which they were given, and that same was defective and had not been repaired by the Chase & Baker Company, as they had agreed to do; that, after receiving said notice of the failure of the consideration

for said notes, the appellant became indebted to the said Chase & Baker Company in a sum in excess of the amount of the said notes, but failed and refused to protect itself by deducting the amount due on the notes in controversy from said debts and remittances; that the method used by the appellant and Chase & Baker Company for the purpose of anticipating and defeating any defense to the notes and accounts of the said Chase & Baker Company was sought to be accomplished by the transfer and assignment of notes and accounts due the said Chase & Baker Company, the said Chase & Baker Company guaranteeing the payment before such notes and accounts were assigned and transferred, and upon default in the payment of such notes and accounts by the customers of the Chase & Baker Company the latter company agreed to take them up and return such money as might be advanced thereon by the said National Trust & Credit Company and to pay all costs, expenses, attorney's fees, and protest fees, etc., as might be incurred by the National Trust & Credit Company in the matter of collection of such notes and accounts, and the National Trust & Credit Company was merely the vehicle or agent of the Chase & Baker Company for the collection of same; that the plaintiff had ample protection in its rights to said notes, in the fact that the said Chase & Baker Company had guaranteed the payment of the notes sued upon, and authorized the appellant to reimburse itself out of any funds in the appellant's hands belonging to said Chase & Baker Company; that appellant, after it received notice of the defendant's defense, continued to remit large sums of money to said Chase & Baker Company on the notes and accounts of the customers of said Chase & Baker Company, and refused and failed to reimburse itself for the money paid on the notes sued upon, if any, with the fraudulent purpose and intent to shield the said Chase & Baker Company from the defendant's defense to said notes, and with that purpose and intent brought this suit without joining as defendant, said Chase & Baker Company.

The defense of the defendant, in other words, to the notes sued upon revolved around the following propositions: (1) The appellant had no right to maintain this suit, inasmuch as the notes were made payable to the Chase & Baker Company or order, and the evidence showed, or tended to show, that the Chase & Baker Company had never indorsed the said notes. (2) The evidence tended to show that the appellant was merely the agent of the Chase & Baker Company for the collection of the notes, and was not the owner thereof; and, it being undisputed that the consideration for the notes had failed, the appellant could not recover. (3) That there was evidence that the appellant was not a purchaser for value, and in good faith and

without notice of the appellee's defense of failure of consideration. (4) The evidence showed without contradiction that the appellee did not owe Chase & Baker Company the amount of these notes, because they were given for a player piano which had been returned by the appellee to the said Chase & Baker Company, at their request, and the appellant, seeking equity, was required to do equity, and the uncontroverted evidence showing that the appellant had a written guaranty from the Chase & Baker Company that said company would pay the said notes upon the failure of the appellee to pay the same when due, and that the appellant was indebted to the said Chase & Baker Company after they learned of the appellee's defense, in an amount in excess of the said notes, and failed and refused to reimburse itself; therefore the appellant could not maintain this suit upon the plea that it was a purchaser for value in good faith and without notice of the appellee's defense.

The case was tried before the court. No conclusions of fact and law are in the record, and the cause is properly before this court for consideration.

[1, 2] The first and second assignments of error are as follows:

(a) "The court erred in rendering judgment in favor of the defendant and against the plaintiff in this: The uncontradicted evidence shows that the plaintiff was an innocent purchaser for value and before the maturity of the notes, and as such, judgment should have been for the plaintiff."

(b) "The court erred in rendering judgment against the plaintiff, for the reason that the undisputed evidence in the case showed that plaintiff bought the notes in controversy before the maturity thereof, paid value for them, and at the time of the purchase of the notes had no notice of any infirmity or vice therein, or any equities which have existed between the immediate parties to the paper and under these facts judgment should have been for the plaintiff."

It was in evidence that the following contract had been entered into between the Chase & Baker Company, hereinafter called first party, and the National Trust & Credit Company, hereinafter called second party, said contract, among other things, providing as follows:

"This agreement, made this 7th day of October, 1911, at Chicago, Ill., by and between the Chase & Baker Company, hereinafter called First Party, and the National Trust & Credit Company, hereinafter called Second Party, witnesseth: That, for one dollar ($1.00) and other good and valuable consideration each to the other paid, receipt whereof is hereby acknowledged, the parties hereto have agreed and do hereby agree as follows:

"First. That said Second Party shall buy from said First Party all acceptable accounts, tendered to it by said First Party (it being understood that there is nothing in this contract that can be construed to obligate the First Party to sell accounts to Second Party unless it desires so to do), and pay therefor the face value thereof, less the following discounts: One per cent. on accounts that are paid within fifteen days; two per cent. on accounts that are paid within thirty days; three per cent. on accounts that

are paid within sixty days; four per cent. on accounts that are paid within ninety days; subject, however, to the terms of this and any subsequent written agreement executed by the parties hereto; that the Second Party shall pay: Seventy-eight per cent. on thirty-day accounts; seventy-seven per cent. on sixty-day accounts; seventy-six per cent. on ninety-day accounts—upon delivery and acceptance of such accounts. The remainder, less discount and deductions taken by the debtor, shall be paid immediately after the collection of the account by the Second Party; but no payment shall be made while any of said accounts are in default.

"Second. The First Party shall assign and deliver to said Second Party all accounts purchased, including the right of stoppage in transitu and title to the merchandise named in the accounts, subject only to the rights of the purchaser therein.

"Third. That the First Party shall act as the Second Party's agent, without compensation or cost, to collect, transmit and deliver, on the day of the receipt thereof, the original checks, drafts, note and other remittances received by said First Party in payment of or to apply on accounts sold pursuant to this agreement; that the first party shall cause such attention to be given to the collection of said accounts as the Second Party may require; that the Second Party has the right to terminate this agency at any time for failure of the First Party to comply with the terms of this agreement.

"Fourth. Said First Party hereby guarantees the payment to the Second Party or its assigns of all accounts purchased hereunder according to the terms thereof, and agrees that within five days after receipt of written request so to do, the First Party shall take up, at their face value, all accounts in default or against insolvent debtors. Immediately after the purchase of every account hereunder, said First Party shall make upon its books an entry showing the sale of said accounts to said Second Party, and said Second Party is hereby given the right and privilege of auditing the books and accounts, and of inspecting the records of said First Party, including all correspondence relating to said accounts, at any time that it may see fit so to do.

"Fifth. Said First Party hereby appoints Melville N. Rothschild and John L. Little and each of them, attorney in fact, with power of substitution, to indorse the name of said First Party upon all notes, checks and other forms of exchange received in payment on said accounts and to indorse all bills of lading and shipping receipts relating to said accounts.

"Sixth. That said second party in making purchase of accounts hereunder relies upon the guaranties and covenants of said First Party herein contained and upon the written representations made to it by said First Party as to the financial responsibility of said First Party; that said written representation heretofore made and that any hereafter be made are for the purpose of establishing the credit of said First Party with said Second Party so that sale of accounts may be made hereunder.

"Seventh. That said First Party shall execute and deliver to said Second Party, or its assigns, any document necessary or proper to carry into effect this contract, and should said Second Party employ counsel or cause legal action to be instituted to enforce the payment of any of said accounts, or any part thereof, then and in either case, said First Party shall immediately pay to said Second Party or its assigns, all court costs, expenses, attorney's and stenographer's fees which may be by it expended in such proceedings.

"In witness whereof, the said first party has hereunto set its hand and seal, and said Second Party has caused these presents to be executed by its president and secretary, and its corporate seal to be hereto attached."

It will be seen by the fourth section of said agreement that the National Trust & Credit Company bought all the notes and accounts with the agreement practically to pay a certain per cent. on the amounts collected, and for the amounts not collected they would reassign the said paper to the Chase & Baker Company, and that the said Chase & Baker Company would pay all the fees necessary for collection, etc.

The view we take of this contract is that the said National Trust & Credit Company was more in the nature of a collection agency, and that it did not, in fact and in truth, become the owner for every purpose, and take the chance of losing any of the accounts or notes so bought; that they only contracted to collect such paper as they could, and upon a failure to collect the said notes or accounts should be reassigned and redelivered to the Chase & Baker Company. In other words, the National Trust & Credit Company could not be said to become the owner of the paper in every sense of the word, but that it only contracted to handle said paper for a certain per cent., and return such as were uncollected to the real owner, the Chase & Baker Company. Therefore they were not innocent purchasers of the paper for value and before maturity of the notes in question, and that any equities that existed, in fact, between the appellee and the Chase & Baker Company could be urged as a defense in the action upon the notes. It having been shown by the appellant that the consideration of the notes sued on was a player piano, and that said Chase & Baker Company were still in possession of one of the player pianos, and that the appellee was still willing to pay the two notes that are sued upon in this case if the piano was returned to him by Chase & Baker Company, it appears that appellee could plead a failure of consideration, just as if there had been no alleged transfer of the notes to the Trust & Credit Company. In other words, it is the opinion of the court that the appellant cannot be considered a purchaser for value of the notes and in good faith without notice of appellee's defense of failure of consideration, and that, appellant not occupying that attitude, any defense that could be justly urged against the Chase & Baker Company could be urged in the present suit, and as if the Chase & Baker Company were themselves parties to the suit. The first and second assignments, therefore, are overruled.

The third assignment is as follows:

"The court erred in rendering judgment for the defendant against the plaintiff for the reason that defendant by his pleading did not put the plaintiff upon proof of the due and proper indorsement of the notes, and the validity and genuineness of said indorsement and transfer was therefore conclusively presumed as a matter of law, and for this reason judgment should have been for the plaintiff."

We have set out the contract which was made between the Trust & Credit Company and Chase & Baker Company, and therefore it becomes immaterial to pass upon this assignment. We are not unmindful of the cases cited by appellant, to wit, Schauer v. Beitel, 92 Tex. 601, 50 S. W. 931, and Foster v. Railway Co., 176 S. W. 788, and we are persuaded that the law is as it has been announced by Judge Brown in the Schauer Case. See, also, Overstreet v. Manning, 67 Tex. 657, 4 S. W. 248; McKamey v. Thorp, 61 Tex. 648; Houston Oil Co. of Texas v. Hayden, 104 Tex. 175, 135 S. W. 1149; Sperlin v. Peninsula Loan Co., 103 S. W. 232. The third assignment is overruled.

The fourth ground of error is alleged as being in rendering judgment against the plaintiff and for the defendant, for the reason that there was no satisfactory evidence in the case that the defendant had a right to return the piano, or that the defect in the piano was one for which the Chase & Baker Company were in any way liable, and the evidence failed to show that there has been any failure of consideration in the notes, and failed to show that the notes were not valid obligations even in the hands of the original payee. The proposition under this assignment is that the evidence was not sufficient to show that defendant had become entitled to any offset or credit on the notes even had they remained in the hands of the original payee, and still less was defendant entitled to any offset to the notes in the hands of an innocent purchaser.

In our opinion, the evidence was sufficient to show that defendant had become entitled to the credit on the notes if they had remained in the hands of the original payee, and that defendant was entitled, as against the National Trust & Credit Company, who was not an innocent purchaser, as above set out, to the notes in its hands. In this connection, it may be well to quote the language of the court in the case of State Bank v. Blakey & Co., 79 S. W. 333, as follows:

"The case then comes to this: The indorser in good conscience should pay. The bank has its funds in its hands sufficient to satisfy the demand, with a perfect right in equity to offset same in satisfaction of the bill. The pursuit of the acceptor in a foreign jurisdiction is clearly not necessary to the bank's protection, but can only serve to allow the indorser to avail himself of the protection given by law to an innocent purchaser in order to cut the acceptor off from a just defense and compel it to pay a sum of money which in equity it should not pay. In this case the bank had the wagon company, a solvent corporation, bound as an indorser of the note, and, in addition, brought the suit at the instance and request of the indorser, and was given a bond indemnifying it against payment of costs, attorney's fees, or any other loss. In fact, it could be concluded with reason, from the facts, that the bank was a mere figurehead, and that the suit was being prosecuted for the benefit of a corporation that had defrauded appellees, and, under cover of its want of notice, prior to the maturity of the note of the failure of consideration, was attempting to force the payment of an unrighteous claim."

So it may be said in this case that appellant was using its defense of innocent holder to protect a corporation that had defrauded appellee, and under cover of its want of notice prior to the maturity of the notes of failure of consideration was attempting to force the payment of an unrighteous claim. We have carefully considered the record in this cause, and we are of the opinion that the appellant had a fair and impartial trial in the lower court, and that its action should not be disturbed. It is therefore in all things affirmed.