J. Lawrence McBRIDE et al., Appellants,

v.

GULF OIL CORPORATION et al., Appellees.

No. 5061.

Court of Civil Appeals of Texas.
Beaumont.

Dec. 1, 1955.

Rehearing Denied May 23, 1956.

Further Rehearing Denied June 27, 1956.

E. B. Votaw, Vidor, for appellants.

Marcus & Weller, Orgain, Bell & Tucker, Beaumont, Jesse J. Lee, Houston, for appellees.

ANDERSON, Justice.

The suit, in form of trespass to try title, places in issue title to, as well as the right to possession of, the minerals in six separately described tracts of land in Jefferson County, parts of the William or Pelham Humphries league; the six tracts containing an aggregate of 500.91 acres.

Numerous persons joined in bringing the suit, but all of them took nonsuits except the following: Beulah Humphrey Haston, Ether Humphrey, Sol Roberts, Ella Zwingle Bonds, J. M. Bonds, Edward T. Zwingle, Lora (laura) Zwingle Johnson, Sarah Beal, and Frank Beal.

Texas Gulf Sulphur Company and a number of intervenors, warrantors of the title asserted by Texas Gulf Sulphur Company, were the defendants.

The plaintiffs represent themselves to be, and claim as heirs of the person to whom the league of land was originally granted under the colonization laws of Mexico and the State of Coahuila and Texas.

The defendants pleaded at length, but it is sufficient to note that they all entered pleas of not guilty, and that Texas Gulf Sulphur Company cross-acted in form of trespass to try title.

The case proceeded to trial before a jury; but, on motion of the defendants, a verdict in favor of defendants was directed and returned at the close of plaintiffs' evidence-in-chief. Judgment was then rendered that plaintiffs take nothing by their suit. The plaintiffs have appealed.

Foremost among the questions for review is that of whether there was any evidence to prove that plaintiffs are heirs of the original grantee of the league of land. And if the evidence plaintiffs introduced to prove heirship is treated as having been admissible and as having probative value, the question is resolved into the somewhat narrower one of whether there was any evidence to show that the land was granted to

the person through whom plaintiffs claim, rather than to another.

The parties to the appeal have principally addressed themselves to the latter question, and we have concluded that it is the only one that requires discussion. It is to be understood, therefore, that we are assuming, without deciding, that plaintiffs' evidence of heirship was admissible and of probative value.

So considered, it shows plaintiffs to be heirs of a William Humphrey who was born in the State of North Carolina, in the year 1786. It also shows that this William Humphrey never married and never had any children. And the plaintiffs furthermore testified that he never had a *family*.

The grantee of the land, on the other hand, is described in the documentary evidence, which plaintiffs introduced, as having been a native of Tennessee and a man of a family of two persons. In his application for the grant, which bears date of September 27, 1834, the applicant stated: "I have come with *my family, which consists of two persons,* to establish myself in the aforesaid Enterprise of His Excellency, Lorenzo de Zavalla, *if in view of the certificate I send you herewith,* you should see fit to admit me as a colonist." The certificate to which he referred was one made by Benjamin Lindsey, Alcalde, September 27, 1834, the body of which was as follows: "I certify that William Umphres *a native of Tennessee* of the United States of America *is a man of a family consisting of two persons* and a man of good moral habits and industrious and a good citizen and friendly to the Laws and religion of the country *given at the instance of the party interested."* Then, in the grant itself, which issued under date of February 14, 1835, it is recited that the grantee had *fully proved* that *his family* consisted at the time of two persons.

The appellees take the position that the recitations in the mentioned papers, descriptive of the grantee, must be accepted as true and as proving the grantee to have been a native of Tennessee and a man of a family of two persons; hence a different person from the one through whom plaintiffs claim, the William Humphrey who was born in North Carolina and who, if the evidence **is to** be taken literally, had no family.

■ We agree that in the circumstances the descriptive recitations appearing in the application for the grant and in the certificate that was submitted in connection with it, as well as those appearing in the grant itself, must be accepted as true. Both the application and the certificate were prerequisites of the grant; made so by the Law of Colonization of March 24, 1825, pursuant to which the land was granted. Arts. 3–5, Gammel's Laws of Texas, Vol. 1, p. 99. It is fair to infer, therefore, that such fact representations as were made in them were made in order to comply with the law or with administrative rules then in effect. And, from the fact that the grant was made, it is further to be inferred—there being no evidence to the contrary—that the officers whose duty it was to pass upon them found such fact representations to be true. These quasi-judicial findings cannot be gone behind at this late date. See, Fleming v. Giboney, 81 Tex. 422, 424, 17 S.W. 13; Davis v. Bargas, 88 Tex. 662, 32 S.W. 874; Houston Oil Co. v. Hayden, 104 Tex. 175, 135 S.W. 1149; Southwestern Settlement & Development Co. v. Village Mills Co., Tex. Civ.App., 245 S.W. 975.

■ In the sense of accepting them at face value and for their legal worth, we must therefore accept as true both the recitation that the grantee was *a native of Tennessee* and the recitations that he was *a man of a family of two persons;* nor do we understand appellants to contend the contrary. However, when the recitations are accepted at their face values, there remains the question of whether, when given their correct legal interpretations, they are so incompatible with the history of plaintiffs'

kinsman as to identify the latter as a person other than the one to whom the land was granted.

■ Such a degree of incompatibility no doubt exists if the word "family" is considered as having been used in the same sense in the title-paper recitations which show the grantee to have been *a man of a family* and in the testimony of the plaintiffs when they testified that their kinsman had *no family;* but we would not be justified in concluding as a matter of law that the word was used in the same sense in both instances. The Law of Colonization of March 24, 1835, did not itself undertake to define the words "family" and "families" as used in it, and it appears that as the law was construed and applied by those having that responsibility a man might be the head of a family, within contemplation of the law, without having a wife, children or other kinsmen as the family's constituents. The family could consist, for example, of a master and his slaves or his Mexican servants, or, it seems, even of two single men who were living together. Hatch v. Dunn, 11 Tex. 708; Howard v. Colquhoun, 28 Tex. 134; Hardiman v. Herbert, 11 Tex. 656; Bryne v. Fagan, 16 Tex. 391; White v. Holliday, 11 Tex. 606; Burleson v. Mc-Gehee, 15 Tex. 375. Therefore, since the title-paper recitations with which we are dealing give no clue to the identity of the other constituent of the grantee's family of two, we would not be justified in concluding that such other was the grantee's wife, child, or other kinsman. We can only conclude with certainty that the grantee was a man of a family within contemplation of the law under which the grant was made, not that he was a man of a family in the sense of the ordinary implications of that term. On the other hand, from their testimony as a whole, it is clearly apparent that when the plaintiffs testified that their kinsman had *no family* they employed the word "family" in its ordinary sense and had in mind and intended to say nothing more than that he had neither a wife nor a child and

had no kinsman living with him. The title-paper recitations which show the grantee to have been a man of a family are therefore not sufficient of themselves, when compared with the evidence regarding the family status of plaintiffs' kinsman, to establish conclusively that plaintiffs' kinsman was not the person to whom the land was granted. The evidence in this respect did no more at best than present a fact issue regarding the matter of identity.

We are unable, however, to reconcile in any similar manner the certificate's recitation which shows the grantee of the land to have been *a native of Tennessee* and the evidence which shows plaintiffs' kinsman to have been born in the State of North Carolina.

■ Citing Minotto v. Bradley, D.C., 252 F. 600, 603, the appellants concede that a person is *a native* of the state of his birth, and we consider this legally correct. It is said in the mentioned case: "The derivation of the word 'native' indicates the place of birth; a man's native town is the town where he was born; a man's native state, be it Wurttemberg or Massachusetts, is the state where he was born. He may be a citizen of a confederation of states, but his nativity is determined by the place of his birth."

■ ■ The grantee of the land must therefore be considered as having been born in Tennessee. Furthermore, in the absence of evidence to justify a different construction, we think the language of the certificate must be construed as meaning that he was born in Tennessee when there was a state of the United States by that name. This follows naturally, in our opinion, from an application of the general rule that language will ordinarily be given its generally accepted meaning and will be considered as having been used in that sense. The certificate described the grantee as "a native of Tennessee of the United States of America," and, strictly speaking, he could not have been this until there was such a state.

So construed, the language of the certificate definitely identifies the grantee of the land as having been a different person from the one through whom plaintiffs claim, because the latter was born during the year 1786, and, according to the history which appellants have themselves supplied us, Tennessee did not become one of the United States until June 1, 1796. Appellants furthermore admit that there had theretofore been no territory of the United States that was known as Tennessee. Clearly, therefore, if our legal conclusions to this point are correct, the directed verdict in favor of the defendants was proper.

The directed verdict was proper, however, even though the evidence is not construed as establishing conclusively or as a matter of law that the grantee was born in Tennessee after the state by that name came into existence. In other words, treating the grantee as having been correctly described as "a native of Tennessee of the United States of America," even though born before there was such a state, provided he was born in territory that became a part of that state after his birth, the instructed verdict was nevertheless proper under the evidence.

 There was absolutely no evidence to prove that plaintiffs' kinsman was born in that part of North Carolina that later became the State of Tennessee. We think it was necessary in the circumstances that this be proved if he was to be eligible for consideration as having been the person to whom the land was granted. The evidence which proved the land to have been granted to "a native of Tennessee of the United States of America" and plaintiffs' kinsman to have been born in North Carolina undoubtedly established, prima facie, that the land was granted to another than plaintiffs' kinsman. No other construction can be given it in the absence of other evidence justifying a different construction and conclusion. The burden of producing such other evidence rested on the plaintiffs, because they were under the burden of proving that the land was in fact granted

to the person through whom they claim. Dorsey v. Olive Sternenberg & Co., 42 Tex. Civ.App. 568, 94 S.W. 413; Blunt v. Houston Oil Co., Tex.Civ.App., 146 S.W. 248, error refused. Plaintiffs wholly failed to discharge this burden.

In view of the fact that the evidence which we have discussed affirmatively established as a matter of law, or at least prima facie so, that plaintiffs' kinsman was not the person to whom the land was granted, it would be useless for us to discuss other of the evidence which, under different circumstances, might tend to identify him as the grantee. It is all circumstantial in nature and pertains in no manner to the matters we have passed upon.

On the basis of what has been said, the judgment of the trial court is affirmed.

### On Rehearing

On March 14, 1956, we overruled appellants' amended first motion for rehearing and delivered a written opinion in connection with the ruling. Appellants then seasonably filed a second motion, and in it they complain of our failure, in the opinion on their first motion, to make certain requested findings of fact. We have therefore concluded to withdraw the opinion we delivered March 14, 1956, and to substitute the present opinion in its stead.

Appellants urged in their first motion for rehearing, and they reurge in their second motion, that the grounds on which this court originally affirmed the trial court's judgment were neither contained in nor raised by appellees' motion for directed verdict and were therefore not legally subject to consideration by this court. They have requested that we find as facts the following: "(1) The trial court directed verdict herein for appellees in response to their motion therefor based upon six specific grounds stated therein. (2) Appellees' motion for directed verdict filed and presented in the trial court did not include as a ground therefor any reference to the supposed legal effect of the recitation in said certificate of

good moral character that William Humphreys was a 'native of Tennessee of the United States of America.'"

The requested findings are perhaps in keeping with the record, but, to avoid the possibility of a misunderstanding through interpretation, we decline to adopt them literally, preferring, instead, to set out more in detail what the transcript reflects regarding the matters on which fact findings are desired.

The trial court instructed the jury "to return a verdict in favor of the defendants and against the plaintiffs," and the judgment recites that the instruction was given "in response to the defendants' motion" therefor. Pursuant to such instruction, the jury returned a verdict as directed, and judgment was then rendered on the verdict.

Defendants' motion for directed verdict was in writing and contained specific statements of the matters on which the defendants relied as grounds for such a verdict. Only four of the motion's six paragraphs bear upon the matter that is under consideration, and we quote those four in their entirety, italicizing portions of them:

"1. The evidence shows that the plaintiffs claim under a William Humphrey who was a single man, who never married, and who never had a family. The land sued for by plaintiffs, titled to a William Humphries who had two in his family, could have been granted only a colonist with a family. *Therefore plaintiffs' evidence affirmatively establishes that their William Humphrey could and did not receive the grant to the league.*

"2. There being a total failure in the evidence to show that the William Humphries under whom plaintiffs claim had a family consisting of two persons at the dates of the application for the grant, and of the grant itself, any presumption that otherwise might obtain because of similarity of name of plaintiffs' William Humphrey with that of the original grantee cannot be indulged.

"4. The defendants prior possession of the land in controversy and the production of minerals for fifty years defeats the claims of plaintiffs *who have failed to prove that the William Humphrey under whom they claim was the William Humphrey to whom the league involved was granted.*

"6. Because of the long non-claim to, and the non-use of, the land by plaintiffs and their predecessors, it must be conclusively presumed that they legally abandoned the land and title thereto, *if the land was titled to plaintiffs' William Humphries, which it was not under the evidence.*"

Rule 268, T.R.C.P., provides that "a motion for directed verdict shall state the specific grounds therefor", and the primary question with which we are concerned is that of whether, within contemplation of the rule, defendants' motion sufficiently raised the ground or grounds on which this court affirmed the trial court's judgment. We think it did.

In final analysis, the affirmance was grounded on the proposition that as a matter of law the evidence affirmatively established, or at least prima facie so, that the league of land was not granted to the person through whom appellants claim, and this was the very proposition which the defendants specifically urged in the first paragraph of their motion. As presented in the motion, the proposition was linked, it is true, to evidence which did not support it, and the motion nowhere made specific mention of the evidence on which this court sustained the trial court's ruling, but it did reasonably direct attention to the ultimate or controlling fact which appellees were contending the evidence established, and we think this is all that Rule 268 requires shall be done. It is not essential to the validity of a motion for directed verdict that the evidence which is thought to conclusively establish some ultimate or controlling fact be specifically set out and debated in the motion. The trial judge will have heard the evidence and the parties or their attor-

neys can argue it orally. It is even the better practice, we think, to forego any attempt to point out in the motion the specific evidence which is thought to establish a particular fact and to state only that which the evidence is believed to have proved, because there is the possibility, and even the probability, that if the motion should be overruled the court's ruling would be reviewed in the light of only that evidence to which the motion directed attention. However, the fact that the motion does set out the evidence which the maker of the motion erroneously assumes establishes the ultimate fact on which he relies for a directed verdict does not have the legal effect of restricting the trial court to a consideration of only that evidence; and where the motion is granted, as it was in this instance, the reviewing court must ordinarily proceed upon the theory that the trial court considered all evidence bearing upon the ultimate or controlling fact contended for in the motion. Conceding that Rule 268 was adopted for the benefit of litigants as well as for the benefit of the courts, and assuming that it is possible for a motion, through reference to particular evidence, to so mislead the opposing party to his detriment as to render it unjust for the reviewing court to resort to evidence other than that referred to in the motion for the purpose of supporting the trial court's action in granting the motion, the present case presents no such fact situation. Appellants are in no position to claim that they were misled to their detriment by the motion. The identity of the original grantee of the league of land had obviously been recognized from the outset of the trial as one of the principal issues involved, and it was not only to have been expected that appellees would take the position that there was no evidence to show that the land was granted to the person through whom appellants claimed and affirmative proof that it had been granted to another, but we think there is little room to doubt that the parties and the trial court accepted those as being the matters raised by paragraphs one and two of defendants' motion and further referred to in paragraphs four and six. The facts of the case distinguish it from Arnold v. Tarrant Beverage Co., Tex.Civ.App., 215 S.W.2d 894. The motion had failed in that instance to state or raise the ultimate ground which the appellees sought to raise in the appellate court. Here we are only confronted with the failure of the motion to direct attention to the evidence that proved the ultimate fact which appellees contended had been proved.

The original opinion sufficiently disposes of appellants' other assignments of error, both those appearing in their amended first motion and those appearing in their second motion for rehearing.

Our order of March 14, 1956, overruling appellants' amended first motion for rehearing is reaffirmed and appellants' second motion for rehearing is overruled.